Daniel Johnson , Jr. (State Bar No. 57409)
Michael J. Lyons (State Bar No. 202284)
Rita Tautkus (State Bar No. 162090)
Ahren Christian Hsu-Hoffman (State Bar No. 250469)
Corey Ray Houmand (State Bar No. 268366)
MORGAN, LEWIS & BOCKIUS LLP
2 Palo Alto Square
3000 El Camino Real, Suite 700
Palo Alto, CA 94306
Tel.: (650) 843-7250/Fax: (650) 843-4001
Email: djjohnson@morganlewis.com
　　　　mlyons@morganlewis.com
　　　　rtautkus@morganlewis.com
　　　　ahoffman@morganlewis.com
　　　　choumand@morganlewis.com

Attorneys for Plaintiff, FUJIFILM CORPORATION

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| FUJIFILM CORPORATION, a Japanese corporation,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MOTOROLA MOBILITY LLC, a Delaware limited liability company,<br><br>　　　　Defendant. | Case No. 12-03587 RS<br><br>**STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND THE FORMAT OF DOCUMENT PRODUCTION** |

### I. PURPOSE

This Order will govern discovery of electronically stored information ("ESI") in this action. It supplements the Federal Rules of Civil Procedure, this Court's guidelines for the Discovery of Electronically Stored Information ("the ESI Guidelines"), and any other applicable orders and rules, including any Protective Order entered in this action.

### II. COOPERATION

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's ESI Guidelines.

### III. LIAISON

The parties have identified liaisons, at least one primary and one back up, who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

### IV. PRODUCTION FORMATS

**A.** The parties will make reasonable efforts to prepare responsive and nonprivileged data for production in accordance with the agreed-upon specifications set forth below. These specifications apply to hard copy documents or electronically stored information ("ESI") which are to be produced in this litigation.

**B.** Both parties will make reasonable efforts to ensure that any productions made are free from viruses.

**C.** Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order entered in this action. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file.

**D.** The format of production of non-standard electronic files, large oversized documents, etc. will be discussed before production to determine the optimal production format.

    **E.**    Documents shall be produced on external hard drives, readily accessible computer(s), or electronic media (including file transfer sites) ("Production Media"). Each piece of Production Media shall identify a production number corresponding to the production volume (e.g., "VOL001", "VOL002"), as well as the volume of the material in that production (e.g., "-001", "-002"). Each piece of production media shall also identify: (1) the producing party's name; (2) the production date; and (3) the Bates Number range of the materials contained on the Production Media.

    **F.**    Bates numbers must start with FFC for Fujifilm and MML for Motorola.

**V.**    **DATA PROCESSING**

    **A.**    To the extent that keywords are used in limiting the universe of potentially responsive documents to be reviewed, the parties shall meet and confer to try to develop a mutually agreeable list of search terms and protocols prior to the production of documents. Any search methodology employed must open compound and nested files. The search utilities employed must support Boolean searches.

    **B.**    Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list. Additional culling of system file types based on file extension may include, but are not limited to: WINNT, LOGS, DRVS, MP3, C source code (c), C++ source code (cpp), Channel Definition Format (cdf), Creatures Object Source (cos), Dictionary file (dic), Executable (exe), Hypertext Cascading Style Sheet (css), JavaScript Source Code (js), Label Pro Data File (IPD), Office Data File (NICK), Office Profile Settings (ops), Outlook Rules Wizard File (rwz), Scrap Object, System File (dll), Temporary File (tmp), Windows Error Dump (dmp), Windows Media Player Skin Package (wmz), Windows NT/2000 Event View Log file (evt), Python Script file (.py, .pyc, .pud, .pyw), and Program Installers.

    **C.**    The parties agree to utilize commercially reasonable efforts to open password-protected or encrypted files, including commercially accessible software, when appropriate and feasible.

STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION
AND THE FORMAT OF DOCUMENT PRODUCTION - 2 -
CASE NO. 12-03587 RS

    **D.** A party is only required to produce a single copy of a responsive document and a party may de-duplicate responsive ESI (based on MD5 or SHA-1 hash values at the document family level) across Volumes. For emails with attachments, the hash value is generated based on the parent/child document grouping. A party may also de-duplicate "near-duplicate" email threads as follows: In an email thread, only the final-in-time document need be produced, assuming that all previous emails in the thread are contained within the final message. Where a prior email contains an attachment, that email and attachment shall not be removed as a "near-duplicate." To the extent that de-duplication through MD5 or SHA-1 hash values is not possible, the parties shall meet and confer to discuss any other proposed method of de-duplication.

**VI. PRODUCTION OF HARD COPY DOCUMENTS**

    **A.** Documents that exist in hard copy format only shall be scanned and produced as single page Group IV TIFFs, with at least 300 dots per inch (dpi). Each TIFF image shall be named according to the corresponding Bates number associated with the document. Each image shall be branded according to the Bates number and agreed upon confidentiality designation. TIFFs shall show all text and images that would be visible to a user of the hard copy documents.

    **B.** A commercially acceptable technology for optical character recognition "OCR" shall be used for all scanned, hard copy documents. OCR text shall be provided as a single text file for each document, and the filename itself should match its respective TIFF filename. The text files will not contain the redacted portions of the documents.

    **C.** Documents should be provided with (a) an ASCII delimited data file (.txt, .dat, or .csv), and (b) an image load file that can be loaded into commercially acceptable production software (e.g., Concordance, Relativity, Summation). Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load file(s) in the production.

    **D.** The following information shall be produced in the delimited data file accompanying hard copy documents: (a) BEGBATES (or PRODBEG), (b) ENDBATES (or PRODEND), (c) CUSTODIAN, (d) CONFIDENTIALITY, and (e) REDACTED.

STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND THE FORMAT OF DOCUMENT PRODUCTION - 3 -
CASE NO. 12-03587 RS

  **E.** All images must be assigned a unique Bates number that is sequential within a given document and across the production sets.

  **F.** In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). The parties will use reasonable efforts to unitize documents correctly.

  **G.** The parties will utilize best efforts to ensure that paper records for a particular Custodian that are included in a single production are produced in consecutive Bates stamp order.

**VII. PRODUCTION OF ELECTRONICALLY STORED INFORMATION**

  **A.** **METADATA**. Each of the metadata and coding fields set forth in Appendix 1 that can be extracted shall be produced for that document. The parties are not obligated to populate manually any of the fields in Appendix 1 if such fields cannot be extracted from a document, with the exception of the following: (a) BEGBATES (or PRODBEG), (b) ENDBATES (PRODEND), (c) BEGATTACH (or PRODBEG_ATT), (d) ENDATTACH (or PRODEND_ATT); (e) CUSTODIAN, (f) CONFIDENTIALITY, and (g) REDACTED, which should be populated by the party or the party's vendor. The parties will make reasonable efforts to ensure that metadata fields automatically extracted from the documents are correct, however, the parties acknowledge that such metadata may not always be accurate and might instead contain irrelevant or incorrect information generated during the collection process.

  **B.** **TIFF IMAGE.** Unless excepted below, single page Group IV TIFFs should be provided, at least 300 dots per inch (dpi). Each TIFF image file should be one page and named according to the unique Bates number, followed by the extension ".TIF". Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape).

  **C.** **EXTRACTED TEXT**. For each document, a text file should be provided along with the image files and metadata. The text of native files should be extracted directly from the native file. However, if a document has been redacted or does not contain extractable text, OCR of the redacted document will suffice in lieu of extracted text.

  **D.** **LOAD AND DATA FILES**. Each production must include (a) an ASCII delimited

STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION
AND THE FORMAT OF DOCUMENT PRODUCTION - 4 -
CASE NO. 12-03587 RS

1  data load file (.txt, .dat, or .csv), and (b) an image load file that can be loaded into commercially
2  acceptable production software (e.g., Concordance, Relativity, Summation). Each TIFF in a
3  production must be referenced in the corresponding image load file. The total number of
4  documents referenced in a production's data load file should match the total number of designated
5  document breaks in the Image Load file(s) in the production. The total number of documents in a
6  production should match the total number of records in the database load file. Each TIFF in a
7  production must be referenced in the corresponding image load file. The total number of pages
8  referenced in a production's image load file should match the total number of TIFF files in the
9  production.

10  **E.  BATES NUMBERING**. All images must be assigned a unique Bates number that
11  is sequential within a given document and across the production sets.

12  **F.  NATIVE FILES**. Spreadsheets (e.g., Excel files) and presentations (e.g.,
13  Powerpoint files) should be produced natively, and any document not easily converted to TIFF
14  may be produced natively. Native copies should be produced with a link in the NativeLink field,
15  along with applicable metadata fields set forth in Appendix 1, where possible. A TIFF placeholder
16  indicating the document was provided in native format should accompany the database record.

17  **G.  PROPRIETARY FILES**. To the extent a response to discovery requires
18  production of ESI accessible only through proprietary software, the parties should continue to
19  preserve each version of such information. The parties shall meet and confer to finalize the
20  appropriate production format.

21  **H.  REDACTION OF INFORMATION**. If documents are produced containing
22  redacted information, the producing party shall supply a list of the documents for any such
23  claim(s) of privilege, indicating the grounds for the redaction and the nature of the redacted
24  material (e.g., privilege, privacy). During the course of the litigation, an electronic copy of the
25  originally, unredacted data shall be securely preserved in such a manner so as to preserve without
26  modification, alteration or addition the content of such data including any metadata therewith. If
27  scanning is necessary to create a redacted version of a document, the producing party shall
28  produce a corresponding load file identifying the custodian from whom the document was

STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION
AND THE FORMAT OF DOCUMENT PRODUCTION                                   - 5 -
CASE NO. 12-03587 RS

collected, to the extent custodian information is available, and shall subject the TIFF files to Optical Character Recognition ("OCR") process if the TIFF files do not already have extractable text, such that the processed files become searchable.

**VIII. PROCESSING OF THIRD-PARTY DOCUMENTS**

    **A.** A party that issues a non-party subpoena ("Issuing Party") shall include a copy of this Order with the subpoena and state that the parties to the litigation request that third-parties produce documents in accordance with the specifications set forth herein.

    **B.** The Issuing Party shall produce any documents obtained pursuant to a non-party subpoena to the opposing party.

    **C.** If the non-party production is not Bates-stamped, the Issuing Party will endorse the non-party production with unique prefixes and Bates numbers prior to producing them to the opposing party.

    **D.** Nothing in this stipulation is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the parties or third-parties to object to a subpoena.

**IX. SEARCHING & PHASED DISCOVERY**

The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate.

    **A.** **Preservation**. The parties have issued appropriate litigation holds and are preserving ESI, subject to any limitations discussed in this stipulation.

    **B.** **Initial Production.** The parties will initially produce basic documentation about the patent(s)-in-suit and the accused instrumentalities, as specified in Section 3 of the Patent Local Rules, in accordance with the deadlines set forth therein.

    **C.** **Custodial Production and Email Production.** The parties agree that all Custodial Productions and Email Productions shall be phased to occur after Initial Productions are made and after the parties have completed their Rule 3-1, 3-2, 3-3 and 3-4 disclosures and accompanying productions. Not more than two months after the completion of those disclosures, the parties agree to meet and confer to discuss the appropriate limitations on both the number and scope of email productions and custodial productions. The parties further agree that until an agreement is

1  reached as to Custodial and Email Productions, general production requests under Federal Rules
2  of Civil Procedure 34 and 45 and the Initial Production as described above shall not include
3  requests for email or other forms of electronic correspondence (collectively "email").

4  **D.  Locations That Will Be Searched for Responsive Documents.** The parties agree
5  to search central repositories, including central databases, or relevant portions thereof to the extent
6  that the party reasonably anticipates they contain non-duplicative Responsive Documents. The
7  parties agree to meet and confer to limit the scope of production from central repositories if the
8  search of central repositories (or relevant portions thereof) that the producing party anticipates
9  contain Responsive Documents is unduly burdensome or is likely to be unreasonably inefficient in
10 identifying relevant documents. Specifically, the parties recognize that certain repositories, by
11 their nature, may not effectively or reasonably be searched using electronic search strings, and the
12 parties agree to notify each other of any such repositories that contain Responsive Documents. The
13 parties will then meet and confer to discuss the collection of Responsive Documents from such
14 repositories, including potentially using other effective collection methodologies.

15 If custodial searches are performed, the parties will search all computers and/or external
16 storage devices for each identified Custodian that the Custodian reasonably anticipates may
17 contain non-duplicative Responsive Documents.

18 **E.  Locations That Will Not Be Searched for Responsive Documents.** The
19 following locations will not be searched under any circumstances, and as such need not be
20 preserved: information stored on personal digital assistants, mobile phones, voicemail systems,
21 instant messaging systems, and automated disaster recovery backup systems and/or disaster
22 recovery backup tapes; deleted, slack, fragmented, or other data only accessible by forensics;
23 RAM, temporary files, or other ephemeral data that are difficult to preserve without disabling the
24 operating system; on-line access data such as temporary internet files, history, cache, cookies, and
25 the like; data in metadata fields that are frequently updated automatically, such as last-opened
26 dates; back-up data that are substantially duplicative of data that are more accessible elsewhere;
27 logs of calls made from mobile devices; server, system, or network logs; data temporarily stored
28 by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily

preserved as part of a laboratory report; and data remaining from systems no longer in use that is unintelligible on the systems in use.

Notwithstanding the foregoing, the parties agree that Responsive Documents that a Custodian indicates are stored on an archival storage medium that the Custodian can readily identify and locate, that cannot be located in any other repository of information, and that can reasonably be searched, will be searched. In addition, nothing in this paragraph shall limit a receiving party's right to request from a producing party more information about the nature of and burden associated with obtaining documents from a particular location. The parties further recognize their obligations to preserve any potentially relevant sources of data, whether live or in archival form, for purposes of this litigation.

**F. Source Code.** To the extent relevant to the Litigation, source code will be made available for inspection pursuant to the terms of the Protective Order. The parties agree that the search terms will not be applied to source code.

## X. MISCELLANEOUS PROVISIONS

**A. Objections Preserved**. Nothing in this protocol shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of documents and ESI.

**B. No Effect on Cost Shifting**. Nothing in this Agreement shall affect, in any way, a producing party's right to seek reimbursement for costs associated with collection, review, and/or production of documents or ESI.

**C. No Waiver**.

1. Pursuant to Federal Rule of Evidence 502(d) and 502(e), the inadvertent production of a privileged or work product protected ESI is not a waiver in the pending case or in any other federal or state proceeding. Moreover, the mere production of ESI in a litigation as part of a mass production shall not itself constitute a waiver for any purpose.

2. Communications involving counsel that post-date the filing of the complaint

STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION
AND THE FORMAT OF DOCUMENT PRODUCTION - 8 -
CASE NO. 12-03587 RS

need not be placed on a privilege log. Communications may be identified on a privilege log by category, rather than individually, if appropriate.

**XI.  MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: February 8, 2013                     Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By */s/ Daniel Johnson, Jr.*
DANIEL JOHNSON, JR.
Attorneys for Plaintiff
FUJIFILM CORPORATION

Dated: February 8, 2013                     Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

By /s/ *Jordan Trent Jones*
JORDAN TRENT JONES
Attorneys for Defendant
MOTOROLA MOBILITY LLC

IT IS SO ORDERED.

Dated: February _8_, 2013

Honorable Richard Seeborg
United States District Judge

STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION
AND THE FORMAT OF DOCUMENT PRODUCTION                                                            - 9 -
CASE NO. 12-03587 RS

1 FILER'S ATTESTATION

2  Pursuant to Civil L.R. 5-1(i)(3) regarding signatures, I, Daniel Johnson, Jr., attest that
3 concurrence in the filing of this document has been obtained from each of the other signatories.
4 I declare under penalty of perjury under the laws of the United States of America that the foregoing
5 is true and correct.  Executed this 8th day of February, 2013, at San Francisco.

6
7       /s/ Daniel Johnson, Jr.
        Daniel Johnson, Jr.

STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION
AND THE FORMAT OF DOCUMENT PRODUCTION                                                  - 10 -
CASE NO. 12-03587 RS

**Appendix 1: ESI Metadata and Coding Fields**

**A. Image Load File** shall contain the following comma-delimited fields:
BEGBATES, VOLUME, IMAGE FILE PATH, DOCUMENT BREAK, FOLDER BREAK, BOX BREAK, PAGE COUNT

**B. Metadata Load File** shall be delimited according to the following characters:
- Delimiter = | (pipe) (ASCII:0020)
- Text-Qualifier = þ (ASCII:00254)

**C.** The following fields will appear in the metadata load file in the order displayed below:

| Field Name | Field Description |
|---|---|
| BEGBATES/PRODBEG | Beginning Bates number as stamped on the production image |
| ENDBATES/PRODEND | Ending Bates number as stamped on the production image |
| BEGATTACH/PRODBEG_ATT | First production Bates number of the first document in a family |
| ENDATTACH/PRODEND_ATT | Last production Bates number of the last document in a family |
| CUSTODIAN | Individual from whom the documents originated |
| NATIVELINK | Native File Link |
| SUBJECT | Subject line of email |
| DATESENT | Date email was sent (format: MM/DD/YYYY) |
| TIMESENT | Time email was sent |
| TO | All recipients that were included on the "To" line of the email |
| FROM | The name and email address of the sender of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| AUTHOR | Any value populated in the Author field of the document properties |
| FILENAME(Edoc only) | Filename of an electronic document |
| DATECREATED (Edoc only) | Date the document was created (format: MM/DD/YYYY) |

All text files will be delivered in a separate, easily identifiable directory.

The time zone for all email data sets shall be set at GMT.

Appendix 1: ESI Metadata and Coding Fields     -1-
Case No. 12-03587 RS