UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FUJIFILM CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>MOTOROLA MOBILITY LLC,<br><br>Defendant. | Case No. 12-cv-03587-WHO<br><br>**ORDER GRANTING MOTION FOR LEAVE TO SUPPLEMENT INVALIDITY CONTENTIONS**<br><br>Re: Dkt. No. 88 |

## INTRODUCTION

Motorola Mobility LLC ("Motorola") moves for leave to supplement its invalidity contentions, seeking to add five prior art references directed towards Fujifilm Corporation's ("Fujifilm") '119 Patent. Based on the parties briefs and for the reasons below, the Court GRANTS Motorola's motion.

## BACKGROUND

On July 10, 2012, Fujifilm filed suit against Motorola alleging infringement of five patents. The '119 Patent is the only patent relevant here.[1] On April 19, 2013, Motorola timely served its initial invalidity contentions. Br. 2. On January 7, 2014, Motorola moved for leave to supplement its invalidity contentions, seeking to add the following prior art references directed towards the '119 Patent: (1) U.S. Patent No. 6,714,530 ("the Haartsen Patent"); (2) Jaap Haartsen, Mahmoud Naghshineh, Jon Inouye, Olaf J. Joeressen, Warren Allen, *Bluetooth: Vision, Goals, and Architecture*, MOBILE COMPUTING AND COMMC'NS REVIEW (Oct. 1998) ("Bluetooth Vision

---

[1] The '119 Patent discloses a wireless telephone that communicates both over a cellular network to a provider, e.g., Verizon, and through another wireless channel without such a provider, e.g., Wi-Fi or Bluetooth. Dkt. No. 66 at 26. This allows the telephone to receive data from a cellular link and then transmit it over the provider-less channel. *Id*.

document"); (3) Nokia Communicator 9000i, including the 9000i User Manual ("Nokia Communicator"); (4) Press Release, Breadbox Computer Company LLC, Breadbox Micro Web Server for Nokia 9000 Wireless Platform (Oct. 27, 1998) ("Breadbox Article"); and (5) Geos SDK for Nokia 9000/9000i ("SDK"). Dkt. No. 88. Motorola contends that "[e]ach of these references is highly relevant because each reference, either alone or in combination with other references, will likely invalidate all of the asserted claims of the '119 patent." Br. 2. Prior to filing this motion, on December 5, 2013, Motorola provided Fujifilm with its proposed supplemental invalidity contentions, seeking to stipulate to the supplementation. *Id.* ¶ 31. On December 12, 2013, Fujifilm declined to stipulate. *Id*. ¶ 32.

Before serving its invalidity contentions, Motorola engaged three professional search firms, retained expert assistance, and deployed outside counsel to search for prior art for the '119 Patent. Declaration of Jordan Trent Jones ("Jones Decl.") ¶ 2. On April 3, 2013, Motorola found a manual for the Nokia Communicator through an Internet search.[2] *Id*. ¶ 18. At some point in April 2013, Motorola also obtained an undated Bluetooth Vision document co-authored by Dr. Jaap Haartsen, who is primarily credited with inventing Bluetooth. *Id*. ¶ 23, 30. Motorola's initial invalidity contentions did not include the Nokia Communicator manual or the Bluetooth Vision documents. Br. 2.

After serving its initial invalidity contentions, Motorola continued searching for additional prior art. Jones Decl. ¶ 4. In May 2013, Motorola learned of a collaboration between Fujifilm and Nokia through a February 14, 2000, Nokia press release that Motorola independently found through an Internet search. Jones Decl. ¶ 7. The press release discussed Fujifilm and Nokia's joint efforts to "develop[ ] Bluetooth technology for imaging applications . . . [and] seamless transfer of digital photos between cameras and mobile phones." *Id.* Ex. 4. The '119 Patent was filed after Fujifilm and Nokia began its collaboration. *Id.* ¶ 7. Since Fujifilm's first document production lacked documents pertaining to the Nokia/Fujifilm collaboration, Motorola served a

---

[2] "The Nokia Communicator 9000i phone did not have native Bluetooth capabilities and did not appear to have 'hot spot' functionality as we know it today." Jones Decl. ¶ 18. According to Motorola, "[t]he August 20, 2013 conversation with Mr. Valli of Nokia caused Motorola to reassess the relevance of the Nokia Communicator to the validity of the '119 patent." *Id*.

second document request on May 29, 2013, specifically seeking documents pertaining to the collaboration. *Id.* ¶ 8.

Apart from Motorola's efforts to learn more about the Nokia/Fujifilm collaboration from Fujifilm, in July 2013, Motorola also reached out to Nokia about its collaboration with Fujifilm and to Ericsson[3] and Dr. Haartsen regarding potential prior art relating to Bluetooth. *Id.* ¶¶ 15, 23. On July 30, 2013, Nokia identified to Motorola a Nokia employee in Finland, Jari Valli, who was involved in developing a demonstration created for the Nokia/Fujifilm collaboration. *Id.* ¶ 4. On August 2, 2013, Motorola advised Fujifilm of Motorola's ongoing search for related prior art. *Id.* ¶ 4. On August 20, 2013, Motorola spoke with Valli, who "identified the Nokia Communicator's involvement in the Nokia/Fujifilm collaboration, and in turn, its relevance to the '119 patent." *Id.* ¶ 17.

On August 23, 2013, Motorola wrote to Fujifilm complaining that Fujifilm's document production lacked documents relating to Fujifilm's joint efforts with Nokia. *Id.* ¶ 9. Although Fujifilm did not respond, Motorola produced a copy of the Nokia Communicator manual to Fujifilm on August 29, 2013, after Mr. Valli "caused Motorola to reassess the relevance of the Nokia Communicator to the validity of the '119 patent." *Id.* ¶¶ 17-18, Ex. 13. Motorola subpoenaed Nokia for documents on September 9, 2013, received Nokia's production on October 10, 2013, and produced Nokia's production to Fujifilm on October 11, 2013. *Id.* ¶ 19.

Regarding Motorola's efforts with Ericsson, Motorola spoke with Ericsson's in-house counsel who confirmed that Ericsson no longer employed Dr. Haartsen. Jones Decl. ¶ 26. Motorola first contacted Dr. Haartsen by email on July 28, 2013, and then briefly by phone on August 7, 2013, followed by a more substantive phone conversation on October 14, 2013. *Id.* ¶ 27. Dr. Haartsen lives in the Netherlands and there were scheduling complications between August and October 2013 due to Dr. Haartsen's travel plans. *Id.* On October 20, 2013, Dr. Haartsen gave Motorola documents from his personal archives, including material from early in the Bluetooth's development and a copy of the Haartsen Patent. *Id.* ¶ 28. Motorola produced the

---

[3] Ericsson was one of the founding members of the Bluetooth Special Interest Group. Jones Decl. ¶ 23.

Haartsen Patent to Fujifilm on October 30, 2013. *Id.* ¶ 29. The Haartsen Patent does not include the term "Bluetooth," but it was "Dr. Haartsen's explanation of the context and significance of the Haartsen patent that caused Motorola to recognize its relevance to the '119 patent." *Id.* ¶ 28. This led Motorola to reevaluate the Bluetooth Vision document that Motorola first found in April 2013 and produced to Fujifilm on August 6, 2013.[4] *Id.* ¶ 30.

On October 18, 2013, Fujifilm sent Motorola 700 documents, many of which are written in Japanese and appear to relate to the Nokia/Fujifilm collaboration. *Id.* ¶ 10. The documents also reference the Nokia Communicator phone in meeting minutes and in a "slide deck," which also "contributed to Motorola's reassessment of the significance of the Nokia Communicator 9000i." *Id.* ¶¶ 10-11. Motorola investigated the Nokia Communicator's capabilities and software, and on November 8, 2013, Motorola found a downloadable version of the SDK for the Nokia Communicator. *Id.* ¶ 20. "The SDK was available from Breadbox Computer Company, which developed software for the Nokia Communicator." *Id.* ¶¶ 20-21, Ex. 16 (Breadbox press release about a web server it developed to run on the Nokia Communicator).[5] Motorola produced the SDK and Breadbox documents to Fujifilm on December 3, 2013. Jones Decl. ¶ 22; Br. 3.

On December 26, 2013, the parties stipulated to the following case schedule:

> Reduction of asserted claims due on January 31, 2014
>
> Reduction of asserted prior art due on February 14, 2014
>
> Fact discovery ends on July 18, 2014
>
> Initial expert reports due on October 3, 2014
>
> Close of expert discovery on November 14, 2014
>
> Trial begins on April 20, 2015.

Dkt. No. 82. The Court ordered Motorola to limit its asserted prior art references to no more than six per patent and 20 total. Dkt. No. 72.

---

[4] Motorola first found an undated version of the Bluetooth Vision document, which Motorola produced to Fujifilm, on August 6, 2013. Jones Decl. ¶ 30. Motorola found a dated version on August 7, 2013, which it produced to Fujifilm on August 29, 2013. *Id.*

[5] Motorola contends that the results of its "investigation currently suggest that the SDK and Breadbox software demonstrate that the Nokia Communicator 9000i were used to perform the alleged inventions of the '119 patent prior to the alleged invention by Fujifilm." *Id.* ¶ 20.

**LEGAL STANDARD**

Under Patent Local Rule 3-6, amendment of invalidity contentions "may be made only by order of the Court upon a timely showing of good cause." PATENT L.R. 3-6. "'[G]ood cause' requires a showing of diligence," and "[t]he burden is on the movant to establish diligence rather than on the opposing party to establish a lack of diligence." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006). "Recent discovery of material, prior art despite earlier diligent search" is an example of a "circumstance[ ] that may, absent undue prejudice to the non-moving party, support a finding of good cause." PATENT L.R. 3-6.

"[The moving party] must demonstrate good cause, an inquiry that considers first whether the moving party was diligent in amending its contentions and then whether the non-moving party would suffer prejudice if the motion to amend were granted." *Acer, Inc. v. Tech. Prop. Ltd.*, No. 08-cv-877-JF, 2010 U.S. Dist. LEXIS 142472, at *10 (N.D. Cal. Sept. 10, 2010). If the moving party is able to show diligence, the court may then consider the prejudice to the non-moving party. *Id.* at 12; *CBS Interactive, Inc. v. Etilize, Inc.*, 257 F.R.D. 195, 201 (N.D. Cal. 2009) (Patel, J.). In considering good cause, the Court can examine such factors as the relevance of the newly-discovered prior art and the difficulty of locating the prior art. *See Yodlee, Inc. v. CashEdge, Inc.*, No. 05-cv-01550-SI, 2007 U.S. Dist. LEXIS 39564, at *2-3 (N.D. Cal. May 17, 2007).

**DISCUSSION**

The Court finds that Motorola established good cause to supplement its invalidity contentions with the five prior art references that it seeks to add.[6] Motorola demonstrated sufficient diligence through its various investigation efforts, its communication with Fujifilm concerning its continued prior art search, and its prompt production of the references to Fujifilm. The eight months between when Fujifilm first discovered prior art to when it filed this motion is not an insignificant amount of time, but the Court concludes that, on balance, if there was any unjustified delay, it was not prejudicial.

Fujifilm argues that Motorola's delayed understanding and appreciation of the references,

---

[6] To the extent that Motorola seeks to change other aspects of the existing claim charts or add other prior art references, Motorola has not demonstrated good cause.

as well as its delay in bringing this motion, demonstrates a lack of diligence.  With regard to the Nokia Communicator and Bluetooth Vision document specifically, Fujifilm contends that Motorola cannot adequately explain its delay from April 2013, when Motorola found these references, to the filing of this motion.   Opp'n 5, 8.  Fujifilm further argues that "Motorola cites no authority of its proposed 'diligence from appreciation of relevance' standard," that a diligent party could have discovered the references sooner and more directly, and if the references were highly material, then a diligent party would have discovered this "during its initial review in April." *Id.* 5-9.  Fujifilm also argues that the Nokia/Fujifilm collaboration has no bearing on the disclosure of the references, and with regard to the Bluetooth Vision document, allowing Motorola to introduce it "on the thin facts it provides. . . . would frustrate the goal of 'requir[ing] parties to crystallize their theories of the case early in the litigation.'" *Id.* 9.

Regarding the Breadbox Article and the SDK references, Fujifilm argues that Motorola should have discovered these references shortly after Motorola found the Nokia Communicator in April 2013, and "the prolonged evolution of Motorola's view of the Nokia Communicator does not provide good cause to amend its invalidity contentions." *Id.* 11.  Regarding the Haartsen Patent, Fujifilm argues that a diligent party could have found the Haartsen Patent earlier since Motorola describes Dr. Haartsen as the "father of Bluetooth" and a "party attempting to locate Bluetooth references can reasonably be expected to search for patents of which Dr. Haartsen is an inventor." *Id.* 10.

In determining good cause, the Court not only considers a party's diligence in searching for prior art or in moving to amend when new information is discovered—the Court also considers such factors as the relevance of the new prior art and the difficulty of locating the prior art. *See Yodlee*, 2007 U.S. Dist. LEXIS 39564, at *2-3.  The good cause requirement does not require perfect diligence.  Although hindsight is often "20/20," identifying and evaluating prior art can be difficult, and new information learned in discovery can lead a party to understandably reevaluate evidence found earlier.  Indeed, the Patent Local Rules specifically acknowledges the possibility that a party may need to supplement invalidity contentions with information found during discovery.  PATENT L.R. 3-6; *O2 Micro*, 467 F.3d at 1365-66.

In bringing its motion, Motorola explains in detail its efforts to discover the additional prior art references and the impediments it faced. There are five patents at issue in this case, and "while Motorola was evaluating and identifying prior art references for the '119 patent, it was also evaluating hundreds of other references for the other asserted patents." Reply 3; Jones Reply Decl. ¶ 2. Before serving its initial invalidity contentions, Motorola engaged three professional search firms, retained expert assistance, and deployed outside counsel to search for prior art. Jones Decl. ¶ 2. Motorola found the Nokia Communicator manual on April 3, 2013, which "did not have native Bluetooth capabilities and did not appear to have 'hot spot' functionality as we know it today." *Id.* ¶ 18. In May 2013, Motorola independently learned of a collaboration between Fujifilm and Nokia in a February 14, 2000, Nokia press release that Motorola independently found through an Internet search. *Id.* ¶ 7. As Motorola investigated Fujifilm's alleged invention of the '119 Patent, Motorola learned that the patent was "filed after Fujifilm and Nokia began jointly developing software to transfer images from Fujifilm cameras to wireless printers via Nokia smart phones." *Id.* Despite the Nokia/Fujifilm collaboration, Fujifilm's first document production lacked documents pertaining to the collaboration. *Id.* ¶ 8.

Motorola's knowledge of the Nokia/Fujifilm collaboration led to Motorola's speaking with Nokia's in-house counsel sometime in early July 2013. Later that month, Nokia put Motorola in touch with a Nokia employee in Finland, Mr. Valli, who was involved in the Nokia/Fujifilm collaboration. *Id.* ¶ 4. Motorola spoke with Mr. Valli on August 20, 2013, and Mr. Valli referenced technical capabilities of the Nokia Communicator that were not readily apparent to Motorola from reviewing the Nokia Communicator manual. Reply 4. Motorola then produced a copy of the Nokia Communicator manual to Fujifilm on August 29, 2013. Jones Decl. ¶ 17.

Apart from pursuing information from Nokia, Motorola's prior art search efforts included specifically seeking from Fujifilm documents about the Nokia/Fujifilm collaboration. Motorola requested these documents on May 29, 2013, followed up with Fujifilm on August 23, 2013, and did not receive relevant documents until sometime in October 2013. The relevant documents produced by Fujifilm in October about the Nokia/Fujifilm collaboration further led Motorola to realize the significance of the Nokia Communicator.

The Nokia Communicator's significance prompted Motorola to investigate the applications that ran on the device, leading Motorola to Breadbox Computer Company ("Breadbox") and the SDK for the Nokia Communicator.  On November 8, 2013, Motorola found the SDK from Breadbox, a company that developed many of the Nokia Communicator applications.  Br. 5. Fujifilm contends that Motorola should have found these references soon after Motorola found the Nokia Communicator in April 2013.  However, at that time, Motorola did not know about the Nokia Communicator's capabilities as it was not apparent from a review of the Nokia Communicator manual.  Moreover, Motorola did not yet know of the Nokia-Fujifilm collaboration.

With regard to the Bluetooth Vision document and the Haartsen Patent, Motorola learned of their significance through Dr. Haartsen.  Motorola "contacted Dr. Haartsen with the goal of identifying Bluetooth-based implementations," and Dr. Haartsen "shared insight into the Bluetooth Vision document and the Haartsen Patent beyond the mere words of the documents [ ]." Br. 5.  Motorola first contacted Dr. Haartsen by email on July 28, 2013, and then briefly by phone on August 7, 2013, followed by a more substantive phone conversation on October 14, 2013. Jones Decl. ¶ 27.  Dr. Haartsen lives in the Netherlands and there were scheduling complications between August and October 2013 due to Dr. Haartsen's travels.  *Id*.  On October 20, 2013, Dr. Haartsen gave Motorola documents from his personal archives, including material from early in the Bluetooth's development and a copy of the Haartsen Patent.  *Id.* ¶ 28.  The Haartsen Patent does not include the term "Bluetooth," but it was "Dr. Haartsen's explanation of the context and significance of the Haartsen patent that caused Motorola to recognize its relevance to the '119 patent."  *Id*.  Accordingly, even if Motorola should have searched earlier for patents invented by Dr. Haartsen, it does not necessarily mean that Motorola would or should have immediately recognized the relevance of the Haartsen Patent without the personal insight provided by Dr. Haartsen.  Given these circumstances, the Court is persuaded that Motorola acted with sufficient diligence to establish good cause.

Regarding the relevance of the prior art references, all appear to be material to the merits of the '119 Patent.  The Patent Local Rules supplement the Federal Rules of Civil Procedure,

which "should be construed and administered to secure the just, speedy, and inexpensive determination of every action." FED. R. CIV. P. 1. Assuming that the new prior art references are material, "it would be unjust for information so highly material to 'the merits to be avoided on the basis of such mere technicalities.'" *Yodlee*, 2007 U.S. Dist. LEXIS 39564, at *2-3; *see also O2 Micro*, 467 F.3d at 1366 ("[it is] certainly correct that refusing to allow any amendment to contentions based on new information developed in discovery could be contrary to the spirit of the Federal Rules").

Fujifilm argues that Motorola (1) engaged in gamesmanship by avoiding interrogatories pertaining to Motorola's communication with third parties about Motorola's efforts to invalidate the patents at issue and (2) concealed the identity of highly material references. But Motorola's alleged gamesmanship is irrelevant to whether Motorola was diligent in searching for prior art or in filing this motion. Regarding Fujifilm's contention that Motorola concealed material references, the Court agrees with Motorola that the references that Motorola produced were readily identifiable through a reasonable review of each production.

Fujifilm further argues that it would suffer prejudice because (1) "Fujifilm may have approached the claim construction process differently had the five references at issue been in the case" and (2) the new references would tax Fujifilm's resources. Opp'n 14. Fujifilm also argues that "courts commonly deny motions even when fact discovery has not closed." Opp'n 14.

As the Federal Circuit has said, the Patent Local Rules seek to "balance the right to develop new information in discovery with the need for certainty as to the legal theories." *O2 Micro*, 467 F.3d at 1365-66. Fujifilm's argument that it may have approached claim construction differently is unpersuasive considering the word "menu" was the only term at issue during construction of the '119 Patent. However, to address any prejudice Fujifilm might suffer with the addition of new prior art references, the Court will allow Fujifilm to explain whether and why supplemental claim construction for the '119 Patent's sole term is necessary.

Regarding taxing Fujifilm's resources, this case is in the early stages of litigation, and any tax on Fujifilm's resources is outweighed by Motorola's right to develop new information in discovery, as well as the interest in considering material information to secure the just resolution

1  of this action.  More than six months remain until the end of fact discovery, more than eight
2  months remain until initial and rebuttal expert reports are due, and more than 10 months remain
3  until the close of expert discovery.  Trial is over a year away.  Accordingly, "the Patent Local
4  Rules' concern with parties sandbagging opponents late in the discovery period is [ ] not at issue."
5  *Yodlee*, 2007 U.S. Dist. LEXIS 39564, at *6.  Moreover, allowing the references to be
6  supplemented here would not frustrate the Patent Local Rules' goal of "requir[ing] parties to
7  crystallize their theories of the case early in the litigation."  *O2 Micro*, 467 F.3d at 1366 n.12.

## CONCLUSION

For the reasons above, Motorola's motion to supplement its invalidity contentions with the five prior art references directed towards the '119 Patent is GRANTED.  To the extent that Motorola seeks to change aspects of the existing claim charts or add other prior art references, those requests are DENIED.

Motorola shall file its invalidity contentions within three days from the date of this Order. Within 20 days, Fujifilm may also file a three-page letter brief explaining whether and why supplemental claim construction for the '119 Patent's term "menu" is necessary.  Motorola may file a three-page response within seven days thereafter.  The Court will then decide whether supplemental claim construction is necessary.

**IT IS SO ORDERED**.

Dated:  February 5, 2014



WILLIAM H. ORRICK
United States District Judge