1
2
3
4            UNITED STATES DISTRICT COURT
5            NORTHERN DISTRICT OF CALIFORNIA
6

| FUJIFILM CORPORATION, | Case No. 12-cv-03587-WHO |
|---|---|
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; DEFENDANT'S MOTION TO STRIKE** |
| v. | |
| MOTOROLA MOBILITY LLC, | |
| Defendant. | Re: Dkt. Nos. 190, 195 |

## INTRODUCTION

This is a patent infringement action. Plaintiff Fujifilm Corporation ("Fujifilm") accuses defendant Motorola Mobility LLC ("Motorola") of infringing claims 1, 2, 7, and 11 of U.S. Patent No. 6,144,763 (the '763 patent); claim 1 of U.S. Patent No. 8,306,285 (the '285 patent); claim 11 of U.S. Patent No. 7,327,886 (the '886 patent); and claims 1, 13, and 35 of U.S. Patent No. 6,915,119 (the '119 patent). Each of the asserted patents concerns technology used in digital cameras and cellular telephones. Trial is set for April 20, 2015.

This order addresses two motions: Fujifilm's motion for partial summary judgment on the date of the hypothetical negotiation to be used for determining reasonably royalty damages, and Motorola's motion to strike portions of Fujifilm's expert's testimony on infringement and validity of the '119 patent. While I agree with Fujifilm's argument that the hypothetical negotiation date must be based on the date when infringement by the accused products began, there is a genuine dispute of material fact over when that occurred. Fujifilm's motion for partial summary judgment is DENIED. Motorola's most recent attempt to resolve factual disputes over the plain and ordinary meaning of claim terms before trial, through its motion to strike, is DENIED. Its other requests to strike are GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

Fujifilm filed its initial complaint on July 10, 2012 and a first amended complaint on November 19, 2012.  Dkt. Nos. 1, 16.  Motorola served its initial invalidity contentions on April 19, 2013 and its supplemental invalidity contentions on February 7, 2014.  The supplemental invalidity contentions assert that the '119 patent is invalid, among other reasons, because the claimed subject matter was invented by "Nokia, including engineers at Nokia," during a period of collaboration between Fujifilm and Nokia in 1999 and 2000.  Dkt. No. 96 at 5.

In November 2014, the parties submitted a joint statement regarding Fujifilm's request to designate a substitute damages expert due to concerns regarding the credibility of its original damages expert, Dr. Gordon Rausser, that had emerged in an unrelated case pending in another district.  Dkt. No. 145.  I granted the request subject to certain limitations on the substitute expert's testimony and instructed the parties to meet and confer on an appropriate schedule to accommodate the substitution without requiring modification of the schedule for dispositive motions or trial.  Dkt. No. 147.  The parties stipulated to a separate round of partial summary judgment motions focused exclusively on damages, with the following relevant deadlines: (1) motions due on or before February 20, 2015; (2) oppositions due on or before February 27, 2015; and (3) replies due on or before March 6, 2015.  Dkt. No. 150.

In December 2014, Motorola moved for summary judgment of noninfringement on each of the patents in suit, and Fujifilm moved to strike various portions of two expert reports on invalidity submitted by Motorola.  Dkt. Nos. 153, 160.  I granted in part and denied in part both motions.  Dkt. No. 196.  Relevant here, I denied Motorola's motion for summary judgment as to each of the patents in suit except U.S. Patent No. 5,734,427 (the '427 patent) (thereby removing the '427 patent from the case) and granted Fujifilm's motion to strike testimony by Fujifilm's expert, Dr. Bims, regarding the Fujifilm-Nokia collaboration.  *See id.*

Per the stipulation, Fujifilm filed its motion for partial summary judgment on damages on February 20, 2015.  Dkt. No. 195.  Motorola did not move for partial summary judgment on any damages issues.  I heard argument from the parties on Fujifilm's motion for partial summary judgment and Motorola's motion to strike at the pretrial conference on March 12, 2015.

United States District Court
Northern District of California

United States District Court
Northern District of California

# LEGAL STANDARD

## I.    SUMMARY JUDGMENT

A party is entitled to summary judgment where it "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is genuine if it could reasonably be resolved in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is material where it could affect the outcome of the case. *Id.*

The moving party has the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Once the movant has made this showing, the burden shifts to the nonmoving party to identify specific evidence showing that a material factual issue remains for trial. *Id.*  The nonmoving party may not rest on mere allegations or denials from its pleadings, but must "cit[e] to particular parts of materials in the record" demonstrating the presence of a material factual dispute. Fed. R. Civ. P. 56(c)(1)(A); *see also Liberty Lobby*, 477 U.S. at 248.  The nonmoving party need not show that the issue will be conclusively resolved in its favor. *Liberty Lobby*, 477 U.S. at 248-49.  All that is required is the identification of sufficient evidence to create a genuine dispute of material fact, thereby "requir[ing] a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* (internal quotation marks omitted).  If the nonmoving party cannot produce such evidence, the movant "is entitled to . . . judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case." *Celotex*, 477 U.S. at 323 (internal quotation marks omitted).

On summary judgment, the court draws all reasonable factual inferences in favor of the nonmoving party. *Liberty Lobby*, 477 U.S. at 255.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.*  However, conclusory and speculative testimony does not raise a genuine factual dispute and is insufficient to defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738-39 (9th Cir. 1979).

## II.    MOTION TO STRIKE

Federal Rule of Evidence 702 allows a qualified expert to testify "in the form of an opinion or otherwise" where:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Expert testimony is admissible under Rule 702 "if it is both relevant and reliable." *Cooper v. Brown,* 510 F.3d 870, 942 (9th Cir. 2007). "[R]elevance means that the evidence will assist the trier of fact to understand or determine a fact in issue." *Id.* Under the reliability requirement, expert testimony must "relate to scientific, technical, or other specialized knowledge, which does not include unsubstantiated speculation and subjective beliefs." *Id.* "Importantly, there must be a recognized body of knowledge, learning, or expertise upon which the witness relies. Where there is no field of expertise, nobody will qualify as an expert witness on the subject." *Perez v. Seafood Peddler of San Rafael, Inc.,* No. 12–cv–00116–WHO, 2014 WL 2810144, at *2 (N.D. Cal. June 20, 2014) (internal quotation marks omitted). The burden is on the proponent of the expert testimony to show, by a preponderance of the evidence, that the admissibility requirements are satisfied. Fed. R. Evid. 702 advisory committee's note.

### DISCUSSION

## I.    FUJIFILM'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Fujifilm's motion for partial summary judgment concerns a single issue: the date of the hypothetical negotiation to be used for determining reasonably royalty damages. A patentee who prevails in an infringement action is entitled to "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer." 35 U.S.C. § 284. Where an established royalty does not exist, a court may

determine a reasonable royalty based on a hypothetical negotiation between the parties.  *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 435 F.3d 1356, 1361 (Fed. Cir. 2006).  The hypothetical negotiation is a legal construct that  "attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began."  *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009).  In other words, the "basic question" answered by a hypothetical negotiation is: "if, on the eve of infringement, a willing licensor and licensee had entered into an agreement instead of allowing infringement of the patent to take place, what would that agreement be?"  *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 76 (Fed. Cir. 2012).  "The correct determination of the hypothetical negotiation date is essential for properly assessing damages."  *Id.* at 75 (internal quotation marks and modifications omitted).  "In general, the date of the hypothetical negotiation is the date that the infringement began."  *Id.*

Fujifilm seeks an order (1) establishing that the hypothetical negotiation date for the purposes of this litigation is June 2010, and (2) excluding from trial testimony inconsistent with this hypothetical negotiation date.  Reply 1.  In its opening brief, Fujifilm argued that the hypothetical negotiation date should be December 2009.  *Id.*  That date was based on the first sales in the United States of the Motorola Brute i680, which Fujifilm accused of infringing the '427 patent.  Shortly after Fujifilm filed its opening brief, however, I issued the order granting Motorola summary judgment of noninfringement of the '427 patent.  Dkt. No. 196.  In response to that order, Fujifilm changed course and now argues for the June 2010 hypothetical negotiation date.  Reply 1.  That date is based on the first sales in the United States of the Motorola Droid X, which Fujifilm asserts is now the first accused product to have been sold in the country.  *See* Macartney Decl. ¶ 8 (Dkt. No. 238-1).

Motorola contends that Fujifilm's motion for partial summary judgment should be denied because it is "contrary to fact."  Opp. 1.  It points to the opinion of its damages expert, Dr. Nisha Mody, who asserts that the hypothetical negotiation date should be in 2007, when Motorola first began to sell a product (the Motorola Razr V8) which incorporated features accused of infringing one of the asserted patents (specifically, the '119 patent).  *Id.* at 2; Mody Rebuttal Rpt. ¶¶ 115, 116

1   n.211 (Dkt. No. 231-2).  The Razr V8 is not one of the accused products in this case.

2   Nevertheless, Motorola contends that in light of Mody's opinion, Fujifilm's motion "at most . . .

3   raises a genuine issue of material fact as to whether the Razr V8 incorporated features accused of

4   infringing the '119 patent."  Opp. 2.

5          Fujifilm responds that Mody's opinion is based on the erroneous proposition that the

6   hypothetical negotiation date should be based on the date on which any infringing activity by the

7   defendant began, irrespective of whether that activity is accused of infringement.  Reply 1-3.  It

8   asserts that under Federal Circuit precedent, the hypothetical negotiation in this case should be set

9   just before the start of infringement by the Motorola products actually accused of infringement,

10  not just before the start of infringement by any Motorola product that incorporates allegedly

11  infringing features.

12         I agree with Fujifilm.  The Federal Circuit, as well as courts in this and other districts, have

13  repeatedly and consistently based the hypothetical negotiation date on the start of the activity

14  actually accused of infringement.  *See, e.g., LaserDynamics*, 694 F.3d at 75-76 (determining

15  hypothetical negotiation date based on the first sales of the "accused laptop computers" in the

16  United States); *Integra Lifesciences I, Ltd. v. Merck KGaA*, 331 F.3d 860, 870 (Fed. Cir. 2003)

17  *vacated on other grounds,* 545 U.S. 193 (2005) (finding that the record did not clearly indicate

18  whether the hypothetical negotiation date should be in 1994 or 1995 where it was "not evident

19  whether the 1994 [experiment accused of infringement] was considered by the jury for

20  infringement purposes"); *Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 869 (Fed. Cir. 1993)

21  ("Wang argues that negotiations should have been hypothesized at the start of infringement, i.e.,

22  when both a patent had issued and [the] accused products were sold.  We agree."); *Oracle Am.,*

23  *Inc. v. Google Inc.*, 798 F. Supp. 2d 1111, 1116 (N.D. Cal. 2011) (excluding expert testimony

24  concerning hypothetical negotiation date which failed to consider when the "accused product

25  [was] developed and tested . . . in the United States") (emphasis omitted); *Conceptus, Inc. v.*

26  *Hologic, Inc.*, 771 F. Supp. 2d 1164, 1179-80 (N.D. Cal. 2010) (setting hypothetical negotiation

27  date according to date that accused product was first offered for sale in the United States); *see also*

28  *Boston Scientific Corp. v. Cordis Corp.*, 777 F. Supp. 2d 783, 791-93 (D. Del. 2011); *Henrob Ltd.*

United States District Court
Northern District of California

6

United States District Court
Northern District of California

1   *v. Bollhoff Systemtechnick GmbH & Co.*, No. 05-cv-73214, 2009 WL 3199855, at *1-2 (E.D.

2   Mich. Sept. 29, 2009).  Motorola does not provide a single case in which the court based the

3   hypothetical negotiation date on the start of activity not specifically accused of infringing the

4   asserted claims, and I have not found one either.

5       Motorola's reliance on *Applied Medical Resources Corp. v. U.S. Surgical Corp.*, 435 F.3d

6   1356 (Fed. Cir. 2006), is unconvincing.  In that case, the Federal Circuit rejected the defendant's

7   argument that the district court erred in refusing to give collateral estoppel effect to a jury's

8   reasonable royalty determination in an earlier case involving infringement of the same patents by

9   similar accused products.  *Id.* at 1360-62.  The Federal Circuit reasoned that "the issue of

10  reasonable royalty damages in [the first case] is not identical to the issue of reasonable royalty

11  damages in [the second case] because the infringements requiring compensation began at separate

12  and distinct times . . . Because [the products accused of infringement in the first and second cases]

13  caused two separate infringements, and each infringement commenced on a different date, it

14  follows that the reasonable royalties may well be different from each other."  *Id.* at 1361-62.  The

15  court also noted, however, that "there may be instances, which we do not address here, in which

16  two products, even if not identical, may present the same damages analysis."  *Id.* at 1363.

17      Motorola seizes on this last sentence, asserting that the similarities between the Razr V8

18  and other Motorola phones actually accused of infringing the '119 patent make this a case in

19  which a single damages analysis is appropriate.  Opp. 4-5.  If the issue here was whether a

20  previous determination of reasonable royalty damages for infringement of the '119 patent by the

21  Razr V8 was also binding in this case, Motorola might have a point.  But that is not the issue here.

22  *Applied Medical* does not stand for the proposition that the hypothetical negotiation date may be

23  linked to the start of infringement by a product not accused of infringing the asserted claims.  The

24  case does not help Motorola.

25      If anything, *Applied Medical* adds further support to Fujifilm's position.  In distinguishing

26  between the reasonably royalty findings in the first and second cases, the court in *Applied Medical*

27  emphasized that "reasonable royalty damages are not calculated in a vacuum without

28  consideration of the infringement being redressed.  We are required to identify the infringement

7

requiring compensation, and evaluate damages based on a hypothetical negotiation at the time that infringement began, not an earlier one." 435 F.3d at 1361 (internal citations omitted). The infringement "being redressed" and "requiring compensation" in this case is the infringement allegedly done by the accused Motorola products; accordingly, the hypothetical negotiation date should be based on "the time that infringement began, not an earlier one." *Id.*

This leaves the question of whether Fujifilm has established as a matter of law that infringement by the accused products began in June 2010. Because Fujifilm did not raise this date until its reply brief, Motorola did not have an opportunity to respond in writing. At oral argument, Motorola offered evidence indicating that, even assuming the first domestic sales of the Motorola Droid X were not made until June 2010, the product was developed and tested in this country significantly earlier. Motorola asserts this evidence precludes summary judgment on the hypothetical negotiation date.

Motorola is right. Infringement occurs where one "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent." 35 U.S.C. § 271. As Judge Alsup observed in *Oracle*, infringement in connection with an accused product does not necessarily begin on the date the product is first offered for sale:

> [I]n some cases, such as where a foreign defendant expands its sales of an accused product into the United States market, the date the product is first offered for sale in the United States may in fact be the date infringement began. *Where an accused product is developed and tested here in the United States, however, "use" and therefore infringement will almost always begin well before the first sale.*

798 F. Supp. 2d at 1116 (emphasis in original); *see also Medtronic Sofamor Danek USA, Inc. v. Globus Med., Inc.*, 637 F. Supp. 2d 290, 310 n.26 (E.D. Pa. 2009) (setting hypothetical negotiation at time the accused product was first "available for use and sale"); *Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1123 (S.D.N.Y. 1970) (settling hypothetical negotiation at time the accused product was "first manufactured"). In light of this principle and the conflicting evidence of earlier development and testing in the United States offered by Motorola, the fact that Motorola began selling the Droid X in June 2010 does not establish as a matter of law the date on

United States District Court
Northern District of California

8

1   which infringement began for the purpose of determining the hypothetical negotiation date.  When

2   the accused products first infringed the asserted claims remains a triable question of fact.

3   Fujifilm's motion for partial summary judgment is DENIED.

## II.     MOTOROLA'S MOTION TO STRIKE

5          Motorola's motion to strike focuses on three aspects of the expert reports submitted by

6   Martin Haeberli, Fujifilm's expert on infringement and validity of the '119 patent: (A) Haeberli's

7   application of certain of the '119 patent's claim terms to the accused products and the prior art;

8   (B) Haeberli's testimony regarding the Fujifilm-Nokia collaboration; and (C) Haeberli's testimony

9   regarding whether the Nokia 9000i Communicator telephone constitutes prior art that anticipates

10  the asserted claims of the '119 patent.  I address each issue in turn.

### A.     Claim Terms

12         Similar to its summary judgment motion, Motorola's motion to strike includes a number of

13  arguments regarding the meaning of claim terms that neither party requested construction of

14  during the claim construction process.  Motorola argues that Haeberli's opinions regarding the

15  terms "at least one of," "transmitting and receiving buffer," and "data" as used in the '119 patent

16  reflect "incorrect constructions" of those terms and should be struck.  By "incorrect

17  constructions," Motorola means that Haeberli's interpretations of the terms are either (i) "contrary

18  to [their] plain and ordinary meaning," or (ii) foreclosed by prosecution history disclaimer.  *See*

19  Mot. 1.

20         Motorola initially did not provide any legal basis for striking Haeberli's testimony on this

21  ground.  *See* Mot. 1-10.  In its reply brief, Motorola cites two cases.  *See* Reply 2-3.  In *Apple, Inc.*

22  *v. Samsung Electronics Co.*, No. 12-cv-00630-LHK, 2014 WL 660857 (N.D. Cal. Feb. 20, 2014),

23  Judge Koh considered Samsung's motion to strike various portions of Apple's expert reports on

24  the ground that they included "a host of new claim constructions that were never disclosed during

25  fact discovery, despite being directly responsive to Samsung's Interrogatory No. 46."  *Id.* at *1

26  (internal quotation marks omitted).  Interrogatory No. 46 had requested from Apple a list of all

27  claim terms that Apple contended "ha[d] a meaning other than the plain meaning and should be

28  construed by the Court."  *Id.*  Judge Koh resolved the motion by examining the "new claim

United States District Court
Northern District of California

constructions" in Apple's expert reports to determine whether they "exceed[ed] the bounds" of the claim terms' plain meaning. *Id.* at *6. Where they did not, Judge Koh declined to strike them.

In *MediaTek inc. v. Freescale Semiconductor, Inc.*, No. 11-cv-05341-YGR, 2014 WL 971765, at *1 (N.D. Cal. Mar. 5, 2014), Judge Gonzalez Rogers considered a motion to preclude the defendant's expert from testifying as to the "understanding that someone of ordinary skill in the art would have as to . . . certain terms that were never previously identified for claim construction." *Id.* at *2. Judge Gonzalez Rogers recognized that evidence regarding the plain and ordinary meaning of claim terms is not necessarily inadmissible at trial:

> At trial, parties may introduce evidence as to the plain and ordinary meaning of terms not construed by the Court to one skilled in the art, so long as the evidence does not amount to arguing claim construction to the jury. Arguing claim construction to the jury is inappropriate because it risks confusion and the likelihood that a jury will render a verdict not supported by substantial evidence. Whether any evidence as to a term's plain and ordinary meaning is admissible must be considered in the context of the issues to be tried.

*Id.* at *4 (internal quotation marks, citations, and modifications omitted). However, she rejected the defendant's assertion that its expert was "merely offering testimony within the purview of the plain and ordinary meaning of the . . . claim terms." *Id.* at *5. She found that the expert's testimony relied "heavily" on intrinsic and extrinsic evidence to explain specific meanings of the terms at issue; the testimony thus "extend[ed] too far into the territory of claim construction" to be presented to the jury. *Id.* at *5-6. Accordingly, she granted the motion. *Id*. at *7.

The instant case is plainly distinguishable from *Apple* and *MediaTek*. Motorola does not argue that Haeberli's opinions were improperly withheld during discovery. Nor does Motorola seriously argue that Haeberli's opinions delve too deeply into claim construction to be presented to the jury. Rather, Motorola's position is that Haeberli's opinions are simply wrong as a matter of law, and that on this ground alone, they should be struck.

This is not a proper basis for striking Haeberli's testimony at this time. Motorola's arguments regarding the meaning of "at least one of," "transmitting and receiving buffer," and "data" could have and should have been raised at summary judgment (if not during the claim construction process). Indeed, at summary judgment, Motorola raised several arguments

regarding the meaning of various claim terms that, like "at least one of," "transmitting and receiving buffer," and "data," had not been identified for construction during the claim construction process. *See* Dkt. No. 153. There, as here, Motorola's principal position was that Fujifilm's interpretations of the claim terms were either (i) contrary to their plain and ordinary meaning, or (ii) foreclosed by prosecution history disclaimer. *See id.* There is no reason Motorola could not have included its current arguments regarding the meaning of the '119 patent's claim terms in its summary judgment motion. Motorola's assertion that it did not raise the arguments because they are not "issue dispositive" rings hollow. At the very least, the arguments would have been dispositive on the issue of whether Haeberli's interpretations of the disputed claim terms fit within the scope of their plain and ordinary meaning. *See* Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense – *or the part of each claim or defense* – on which summary judgment is sought.") (emphasis added).

Motorola's request to strike Haeberli's testimony for applying "incorrect constructions" of claim terms amounts to a second summary judgment motion. This alone justifies denying the request. The Ninth Circuit has recognized a district court's "discretion to entertain successive motions for summary judgment," in particular when made "on an expanded factual record." *Hoffman v. Tonnemacher*, 593 F.3d 908, 910-11 (9th Cir. 2010). But I am unaware of any authority requiring a district court to entertain a second summary judgment motion where the motion is based on previously available evidence. A number of courts have explicitly rejected such motions, including when brought "under the guise of a motion to strike." *Purchase Partners, LLC v. Carver Fed. Sav. Bank*, No. 09-cv-09687, 2013 WL 1499417, at *7 (S.D.N.Y. Apr. 10, 2013) ("Plaintiffs cannot now raise this issue under the guise of a motion to strike, as doing so would be the functional equivalent of bringing a second summary judgment motion. The law is clear that it is improper for a party to file a successive motion for summary judgment which is not based upon new facts and which seeks to raise arguments it could have raised in its original motion.") (internal quotation marks omitted); *Armentero v. Willis*, No. 08-cv-02790, 2013 WL 144253, at *2 (E.D. Cal. Jan. 11, 2013) (declining to hear second summary judgment motion where "the 'expanded factual record' that defendant claims to now have before it does not include

any evidence that could not have been obtained and included in defendant's first motion for summary judgment"). Moreover, my Standing Order for Civil Cases "limit[s] [parties] to filing one motion for summary judgment" and requires "parties wishing to exceed this limit [to] request leave of the Court." Standing Order for Civil Cases § 6.[1] Motorola did not seek leave to file a second summary judgment motion in connection with its motion to strike.

I would deny Motorola's motion to strike because it is functionally equivalent to an improper second summary judgment motion. But the motion is also deficient on the merits. Because I took the time to review and hear argument on the motion, I will explain why.

### 1. "at least one of"

Motorola moves to strike several portions of Haeberli's expert reports on the ground that they rely on "incorrect constructions" of the term "at least one of" as used in claims 1 and 35 in the '119 patent. Motorola is wrong, and the testimony will not be struck. Further, in line with Haeberli's testimony, I will construe "at least one of" as used in claims 1 and 35 of the '119 patent as "one or more of the following."

### a. "a menu comprising selections for at least one of . . . "

Claim 35 of the '119 patent includes the following limitation: "wherein said display includes a menu comprising selections for **at least one of** a transmit image mode for transmitting an image from the wireless telephone to an apparatus, a receive mail mode for receiving characters, and a transmit mail mode for transmitting characters." '119 patent 9:58-65 (emphasis added).

Motorola contends that the only reasonable understanding of the plain and ordinary meaning of the "menu comprising" limitation is, "a menu comprising selections for at least one of a transmit image mode . . . , [at least one of] a receive mail mode . . . , and [at least one of] a transmit mail mode . . . " Mot. 2. Haeberli, on the other hand, asserts that the limitation is present in the accused devices because they contain a menu which "includes an option for an image transmission mode by Bluetooth or WiFi." Haeberli Infringement Rpt. 29 (Jones Decl. Ex. A,

---

[1] Available at http://cand.uscourts.gov/whoorders.

1    Dkt. No. 189-3). Motorola contends this opinion is wrong as a matter of law and should be struck

2    because it assumes that the "menu comprising" limitation may be found in a menu which includes

3    only a "transmit image mode" and no "receive mail mode" or "transmit mail mode." Mot. 2.

4        Fujifilm counters that the plain and ordinary meaning of "at least one of" as used in the

5    "menu comprising" limitation is properly understood as "one or more of the following." Opp. 8.

6    Fujifilm states that Haeberli's testimony is consistent with this understanding of "at least one of"

7    and thus may be shared with the jury.

8        I agree with Fujifilm. Motorola's position is based principally on *SuperGuide Corp. v.*

9    *DirecTV Enterprises, Inc.*, 358 F.3d 870 (Fed. Cir. 2004), in which the Federal Circuit considered

10   the meaning of "at least one of" as used in the limitation, "means for storing at least one of a

11   desired program start time, a desired program end time, a desired program service, and a desired

12   program type." *Id.* at 884 (emphasis omitted). The court held that the limitation "requir[es] that

13   the user select at least one value for each category; that is, at least one of a desired program start

14   time, a desired program end time, a desired program service, and a desired program type." *Id.* at

15   886. The court explained:

16           The phrase "at least one of" precedes a series of categories of
             criteria, and the patentee used the term "and" to separate the
17           categories of criteria, which connotes a conjunctive list. A common
             treatise on grammar teaches that "an article of a preposition
18           applying to all the members of the series must either be used only
             before the first term or else be repeated before each term." William
19           Strunk, Jr. & E.B. White, The Elements of Style at 27 (4th ed.
             2000). Thus, "[i]n spring, summer, or winter" means "in spring, in
20           summer, or in winter." . . . Applying this grammatical principle
             here, the phrase "at least one of" modifies each member of the list,
21           i.e., each category in the list.

22   *Id.* Motorola asserts that here also, "[t]he phrase 'at least one of' precedes a series of categories of

23   criteria, and the patentee used the term 'and' to separate the categories of criteria, which connotes

24   a conjunctive list." *Id.*

25       *SuperGuide* did not erect a universal rule of construction for all uses of "at least one of" in

26   all patents, however. The *SuperGuide* court's construction of "at least of" was based on the

27   particular facts of the particular patent at issue there. *See, e.g.,* 358 F.3d at 887 (finding that

28   "[e]very disclosed embodiment teaches that the user must choose a value for each designated

United States District Court
Northern District of California

13

category" and that "nothing in the specification rebuts the presumption that the [ ] patentee

intended the plain and ordinary meaning of ['at least one of']"). Accordingly, numerous courts

have declined to follow the *SuperGuide* court's construction of "at least one of" where the facts

before them called for a different understanding of the term. *See, e.g., VendoNet, Inc. v. Redbox

Automated Retail, LLC*, No. 13-cv-03475, 2014 WL 4555287, at *4 (N.D. Ill. Sept. 15, 2014)

("[*SuperGuide*] did not announce that its rule of grammar was a mandatory rule of claim

construction, to be used even when unnecessary to serve the purpose of the invention."); *Inventio

AG v. ThyssenKrupp Elevator Americas Corp.*, No. 08-cv-00874, 2014 WL 129799, at *3-4 (D.

Del. Jan. 14, 2014) (distinguishing *SuperGuide* and construing "at least one of [A] or [B]" as "[A],

[B], or [A] and [B]"); *Dealertrack, Inc. v. Huber*, No. 06-cv-02335, 2008 WL 5792509, at *7-8

(C.D. Cal. Sept. 27, 2008) (finding *SuperGuide* "inapplicable" in part because the limitation at

issue in *SuperGuide* included categories with values "that users . . . could choose 'at least one

of'"); *Power-One, Inc. v. Artesyn Technologies, Inc.*, No. 05-cv-00463, 2007 WL 896093, at *14

(E.D. Tex. Mar. 22, 2007) (distinguishing *SuperGuide* and construing "at least one of X, Y, and

Z" as "a group [of X, Y and Z from which] at least one is selected").

　　　　Several factors distinguish the "menu comprising" limitation from the limitation at issue in

*SuperGuide* and make Fujifilm's reading of "at least one of" an appropriate reading of that term.

First, contrary to Motorola's assertion, the modes of operation listed in the "menu comprising"

limitation (i.e. "transit image mode," "receive mail mode," and "transmit mail mode") are not

categories comprised of "many possible values" that users must choose "at least one of" for the

invention's purpose to be served. *See Dealertrack*, 2008 WL 5792509, at *7-8 (distinguishing

*SuperGuide* on the same ground).

　　　　Second, the "menu comprising" limitation is not the only place where "at least one of"

appears in claim 35. It also appears in the following two limitations: (1) "a wireless telephone that

receives data of **at least one of** an image and characters through a transmitting provider," and

(2) "a display device [for] displaying a menu for designating **at least one of** transmitting data and

receiving data." '119 patent 9:43-45, 48-55 (emphasis added). Motorola does not dispute that in

these two instances, the plain and ordinary meaning of "at least one of" is reasonably understood

as "one or more of the following."[2]  Claim terms are "presumed to have the same meaning throughout all of the claims in the absence of any reason to believe otherwise."  *Digital-Vending Servs. Int'l, LLC v. Univ. of Phoenix, Inc.*, 672 F.3d 1270, 1275 (Fed. Cir. 2012); *see also Fin Control Systems Pty, Ltd. v. OAM, Inc.*, 265 F.3d 1311, 1318 (Fed. Cir. 2001) ("[W]e begin with the presumption that the same terms appearing in different portions of the claims should be given the same meaning unless it is clear from the specification and prosecution history that the terms have different meanings at different portions of the claims.").  Apart from citing *SuperGuide*, Motorola does not explain why, in this case, "at least one of" should mean different things in different parts of the same claim.

Third, Motorola's construction of "at least one of" would effectively read the term out of the "menu comprising" limitation.  Claim 1 of the '119 patent includes a limitation that is almost identical to the "menu comprising" limitation in claim 35.  The claim 1 limitation provides: "wherein said menu comprises selections for a receive mode for indicating that data has been received, a transmit image mode for transmitting an image from the wireless telephone to an apparatus, a receive mail mode for receiving characters, and a transmit mail mode for transmitting characters."  '119 patent 4:50-55.  Unlike the "menu comprising" limitation in claim 35, the claim 1 limitation does not use the term "at least one of" before listing each mode of operation.  The parties do not dispute that the claim 1 limitation requires that each listed mode of operation be included in the disclosed menu.  *See, e.g.,* Opp. 8 n.3.  Under Motorola's construction of "at least one of," however, the "menu comprising" limitation would require the same thing, effectively nullifying the fact that "at least one of" appears in the "menu comprising" limitation but not in the claim 1 limitation.  This would be "contrary to the well-established rule that claims are interpreted

---

[2] Indeed, as discussed below, Motorola argues that as a result of prosecution history disclaimer, the limitation, "a display device [for] displaying a menu for designating at least one of transmitting data and receiving data," may only be satisfied by a menu that contains both a "transmitting data" option and a "receiving data" option.  By relying on the doctrine of prosecution history disclaimer to make this argument, Motorola implicitly concedes that the plain and ordinary meaning of the limitation extends to a menu that includes only one or the other of the options.

1   with an eye toward giving effect to all terms in the claim." *Digital-Vending*, 672 F.3d at 1275

2   (internal quotation marks omitted).

3         Motorola's motion to strike Haeberli's testimony regarding the "menu comprising"

4   limitation is DENIED.

               **b.**     **"a menu for designating at least one of . . ."**

6         Motorola's second "at least one of" argument has no more merit than the first.  Claims 1

7   and 35 of the '119 patent both recite the following limitation: "a menu for designating **at least one**

8   **of** transmitting data and receiving data."  '119 patent 4:43-48, 9:53-55 (emphasis added).

9   Motorola seeks to preclude Haeberli from testifying that the "menu for designating" limitation

10  may be satisfied by a menu that includes only one of these options – i.e., a menu that includes only

11  a "transmitting data" option or a "receiving data" option.  Mot. 5-6.  Motorola asserts this

12  restriction on Haeberli's testimony is warranted because, during prosecution of the '119 patent,

13  Fujifilm stated that the limitation could only be satisfied by a menu containing both a

14  "transmitting data" option and a "receiving data" option.  *See id.*  On this ground, Motorola seeks

15  to strike the following portions of Haeberli's infringement and rebuttal reports: (1) infringement

16  report, page 29, lines 16-21; (2) infringement report, page 33, lines 18-21; and (3) rebuttal report,

17  page 24, lines 4-13.  *Id.*

18        I am not convinced.  The statements cited by Motorola do not constitute the sort of "clear

19  and unmistakable disavowal" necessary to trigger prosecution history disclaimer.  *Biogen Idec,*

20  *Inc. v. GlaxoSmithKline LLC*, 713 F.3d 1090, 1095 (Fed. Cir. 2013).  For example, Motorola relies

21  on the following passage from the '119 patent's file history:

22           Importantly, the claimed telephone also includes a display device for
23           displaying a menu for designating at least one of transmitting and
             receiving data.

24           Conventional telephones may include a display device.  However,
             such conventional phones do not provide a user with an ability [to]
25           designate one of transmitting or receiving data.  Thus, the display
             device in conventional telephones does not display a menu for
26           designating at least one of transmitting data and receiving data.

27           The claimed invention, on the other hand, provides a user with an
             ability [to] designate at least one of transmitting and receiving data.
28           Thus, the display device in the claimed telephone displays a menu

United States District Court
Northern District of California

> for designating at least one of transmitting data and receiving data. For example, when the telephone detects data which may be received/transmitted, a user may view the menu on the display device and use a designating device to designate whether the data should be received by the telephone or transmitted to a designated apparatus.

> October 26, 2000 Second Amendment Under 37 C.F.R. § 1.116 at 474 (Jones Decl. Ex. D, Dkt. No. 190-4) (emphasis omitted).

This is a not an unambiguous disavowal of all menus which offer only one of a "transmitting data" option or a "receiving data" option. The passage either quotes the limitation itself (i.e., "at least one of transmitting and receiving data") or refers to transmitting "or" receiving data. *See id.* It is not clear how such language could possibly result in prosecution history disclaimer, and Motorola does not offer any explanation. *See* Mot. 5-6; Reply 11-12. Motorola merely adds emphasis to the final words of the quoted passage (i.e., "use a designating device to designate whether the data should be received by the telephone or transmitted to a designated apparatus") and states, "In other words, the claimed invention of the '119 patent must present both options . . . to the user." Mot. 5-6. The other statements cited by Motorola are likewise ambiguous at best and supportive of Fujifilm's reading of the "menu for designating" limitation at worst. Motorola's motion to strike Haeberli's testimony regarding the limitation is DENIED.

### c.     Claim Construction Ruling

Having considered the parties' evidence and arguments regarding the meaning of "at least one of" as used in claims 1 and 35 of the '119 patent, I find that this dispute presents a "fundamental dispute regarding the scope of a claim term," *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008), that is likely to generate improper claim construction arguments at trial, *see Cordis Corp. v. Boston Scientific Corp.*, 561 F.3d 1319, 1337 (Fed. Cir. 2009). Accordingly, I find it appropriate to construe the term at this time. I construe it as "one or more of the following." The parties shall not introduce evidence or argument inconsistent with this construction at trial.

### 2.     "transmitting and receiving buffer"

Motorola next contends that Haeberli improperly attempts to distinguish prior art by inserting an additional limitation into the "transmitting and receiving buffer" limitation of claim

1    13 of the '119 patent.  Mot. 10-11.  Motorola moves to strike page 39, line 12 to page 40, line 5 of

2    Haeberli's rebuttal report on this ground.  In that portion of the rebuttal report, Haeberli describes

3    the "transmitting and receiving buffer" disclosed in claim 13 as follows:

4            The buffer must buffer data received from the transmitting provider
        and destined for another device, and must also buffer data from the

5            other device destined to be transmitted to the transmitting provider.
        In other words, it buffers both data transmission and data reception,

6            hence its name: transmitting and receiving buffer.

7    Haeberli Rebuttal Rpt. 39-40 (Jones Decl. Ex. B, Dkt. No. 189-4).  Haeberli then states that the

8    invention claimed in the '119 patent, unlike the prior art, "buffer[s] data traveling in both

9    directions using the transmitting and receiving buffer."  *Id.*  Motorola asserts that Haeberli's

10    opinion is incorrect as a matter of law because it reads into the "transmitting and receiving buffer"

11    limitation an additional "bidirectional data flow" limitation.  Reply 12.

12            This argument fails.  Motorola concedes that "transmitting and receiving buffer" should be

13    given its plain and ordinary meaning and proffers no particular construction of the term except to

14    argue repeatedly that Haeberli's reading of it is wrong.  Motorola provides almost no explanation

15    of what is wrong with his reading, however.  Motorola cites only two items in support of its

16    position: (1) excerpts from Haeberli's deposition testimony in which he states that claim 13 "talks

17    only about data flowing in one direction" and does not use the term "bidirectional," Haeberli Dep.

18    51-53, 57-58; and (2) portions of the '119 patent's specification which describe data flowing

19    through the "transmitting and receiving buffer" in only one direction, not "bidirectionally," '119

20    patent 2:45-53, 3:60-65, 4:1-10.

21            Neither Haeberli's deposition testimony nor the cited portions of the specification establish

22    that Haeberli's reading of "transmitting and receiving buffer" is beyond the scope of the plain and

23    ordinary meaning of that term.  At most, these items establish that the preferred embodiment

24    disclosed in the '119 patent does not involve "bidirectional data flow."  But that alone is not

25    enough to render Haeberli's understanding of the plain and ordinary meaning of "transmitting and

26    receiving buffer" incorrect as a matter of law.  *See Decisioning.com, Inc. v. Federated Dep't*

27    *Stores, Inc.*, 527 F.3d 1300, 1314 (Fed. Cir. 2008) ("[The] description of a preferred embodiment,

28    in the absence of a clear intention to limit claim scope, is an insufficient basis on which to narrow

United States District Court
Northern District of California

the claims."); *Spireon, Inc. v. CallPass Tech, LLC*, No. 12-cv-01903-SI, 2013 WL 706867, at *3 (N.D. Cal. Feb. 26, 2013) ("[L]imitations from a preferred embodiment described in the specification generally should not be read into the claim language.").

As Motorola provides no other grounds for holding that Haeberli's reading of the "transmitting and receiving buffer" limitation is incorrect as a matter of law, Motorola's motion to strike this testimony is DENIED.

### 3.   "data," "data file," and "data set"

Motorola's final group of arguments regarding the '119 patent's claim terms concerns Haeberli's interpretations of the terms "data," "data file," and "data set."  Mot. 7-10.  Motorola argues that Haeberli's interpretations of these terms are unreasonable because (1) he relies on claim preambles which are not properly construed as limiting in determining the plain and ordinary meaning of "data" as used in claims 1 and 35; (2) at certain points in his testimony he conflates the term "data" with the terms "data file" and "data set;" and (3) he unjustifiably distinguishes between "data" as used in claim 13 and "voice data such as telephone conversations."  Mot. 7-10; Reply 2-7.

As Fujifilm points out, Motorola's scattershot arguments concerning the plain and ordinary meaning of "data," "data file," and "data set" have no clear target.  At best, these arguments reflect a genuine dispute as to how a person of ordinary skill in the art would understand the plain and ordinary meaning of the terms when reading them in the context of the '119 patent.  Such a dispute "raises a factual question that must be resolved by the jury."  *Cave Consulting Grp., LLC v. OptumInsight, Inc.*, No. 11-cv-00469-EJD, 2015 WL 740379, at *15 (N.D. Cal. Feb. 20, 2015).  It does not provide a basis for striking expert testimony.  Motorola's motion to strike Haeberli's testimony on the ground that it reflects unreasonable interpretations of "data," "data file," or "data set" is DENIED.

### B.    Fujifilm-Nokia Collaboration

Motorola moves to strike portions of Haeberli's expert reports on the ground that they constitute improper lay testimony.  Mot. 11-13.  The portions are (1) Haeberli's infringement report at page 7, lines 5-12; (2) Haeberli's rebuttal report from page 80, line 4 to page 83, line 24;

United States District Court
Northern District of California

and (3) Haeberli's rebuttal report from page 94, line 18 to page 96, line 14.  *Id.*  Each of these

portions concerns the Fujifilm-Nokia collaboration.  For example, page 7, lines 5-12 of Haeberli's

infringement report state:

> While the Bluetooth standard was still under development, I understand that Nokia approached Fuji Photo Film Co., Ltd. (now Fujifilm Corporation) about collaborating to determine how to implement Bluetooth for transmission of data between a digital camera and a mobile phone.  At that time, Fuji Photo was in the midst of a successful shift from the film market to the digital photography market, and had already established itself as a clear leader in digital imaging. Fuji Photo implemented limited Bluetooth functionality in a digital camera as part of the collaboration with Nokia.

Haeberli Infringement Rpt. 7 (internal citations omitted).   Motorola contends that testimony like

this is inadmissible at trial for the exact reason that Fujifilm previously (and successfully) moved

to strike similar expert testimony offered by Motorola: it "simply rehash[es] otherwise admissible

evidence about which [the expert] has no personal knowledge," *Highland Capital Mgmt., L.P. v.

Schneider*, 379 F. Supp. 2d 461, 468-69 (S.D.N.Y. 2005), and thus provides no more than a factual

narrative which "a lay juror is equally capable of constructing," *Taylor v. Evans*, No. 94-cv-08425,

1997 WL 154010, at *2 (S.D.N.Y Apr. 1, 1997).  Such evidence "is properly presented through

percipient witnesses and documentary evidence," not through expert testimony.  *In re Rezulin

Products Liab. Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004).

Fujifilm makes two counterarguments.  First, Fujifilm contends that at least some of the

targeted portions of Haeberli's expert reports do more than "simply rehas[h] otherwise admissible

evidence."  Fujifilm points to page 80, lines 4-18 of Haeberli's rebuttal report, where Haeberli

states in relevant part:

> As discussed elsewhere in this report, transmission from digital cameras to mobile phones (along with many other concepts known for use with infrared and Bluetooth) are not the invention of the '119 Patent. In fact, wireless transmission from a digital camera to a mobile phone is essentially what is shown on the left side of Figure 3 of the '119 Patent; as described above, the left side of Figure 3 appears to be a depiction of the prior art. The asserted claims of the '119 Patent are directed to a different data flow, which is depicted on the right side of Figure 3: receiving data from a transmitting provider (such as a cellular carrier) to a mobile phone and transmitting the data to a designated device without the transmitting

United States District Court
Northern District of California

provider. The claims then further describe details of different implementations of this data flow.

Haeberli Rebuttal Rpt. 19. Fujifilm asserts that this passage constitutes proper expert testimony regarding technical aspects of the '119 patent. Opp. 21. Motorola concedes in its reply brief that this particular portion of Haeberli's testimony "does not appear to be inappropriate," Reply 13, so to the extent Motorola's motion seeks to strike page 80, lines 4 to 18 of Haeberli's rebuttal report, the motion is DENIED.

Fujifilm's defense of the rest of the targeted portions of Haeberli's reports is less convincing. It states that the portions constitute Haeberli's response to Dr. Bims's testimony on the Fujifilm-Nokia collaboration. Opp. 21. It asserts that it would be "unjust" to allow Motorola to offer such testimony while precluding Fujifilm from doing the same. *Id.* Whatever the merits of this argument in the abstract, it is not persuasive now that the contested portions of Dr. Bims's expert report have been struck. Fujifilm offers no other grounds for allowing Haeberli to deliver testimony regarding aspects of the Fujifilm-Nokia collaboration about which he has no personal knowledge and no legally cognizable expertise. To the extent Motorola's motion seeks to strike (1) Haeberli's infringement report at page 7, lines 5-12; (2) Haeberli's rebuttal report from page 80, line 19 to page 83, line 24; and (3) Haeberli's rebuttal report from page 94, line 18 to page 96, line 14, the motion is GRANTED.

### C.   Nokia Communicator 9000i

Motorola moves to strike page 7, line 13 to page 11, line 5 of Haeberli's rebuttal report on the ground that this portion of the report, like Haeberli's testimony regarding the Fujifilm-Nokia collaboration, constitutes improper lay testimony. Mot. 13-14; Reply 14-15.

In this portion of the report, Haeberli rebuts Dr. Bims's opinion that the Nokia Communicator 9000i ("Nokia 9000i") telephone is prior art that anticipates claims 1, 13, and 35 of the '119 patent. *See* Haeberli Rebuttal Rpt. 7-11. Haeberli states that Dr. Bims's opinion is based exclusively on Nokia 9000i manuals and deposition testimony regarding the telephone, not an actual Nokia 9000i,[3] and that Dr. Bims's opinion fails to provide clear and convincing evidence

---

[3] Dr. Bims admitted at his deposition that he did not review a Nokia 9000i in reaching his opinions in this case. *See* Bims Dep. 149-51 (Dkt. No. 193-4).

United States District Court
Northern District of California

1   that any of the Nokia 9000i manuals were publicly available by the relevant dates, as required to

2   constitute invalidating prior art.  *Id.* at 8.  Haeberli examines each manual on which Dr. Bims's

3   opinion is based and details why, in his opinion, it is not clear when the manual became publicly

4   available.  *Id.* at 8-9.  Haeberli also asserts that Dr. Bims fails to provide clear and convincing

5   evidence that the functionality he claims was present in the Nokia 9000i was in fact present in the

6   actual telephone.  *Id.* at 9.  Haeberli emphasizes that there is no evidence that the manuals which

7   Dr. Bims reviewed accurately describe the Nokia 9000i, and that the deposition testimony cited by

8   Dr. Bims is unreliable.  *Id.* at 10-11.

9          Motorola argues that Haeberli's testimony regarding the Nokia 9000i is improper because,

10   like Haeberli's testimony regarding the Fujifilm-Nokia collaboration, it is directed to "lay matters

11   which a jury is capable of understanding and deciding without the expert's help."  *Andrews v.

12   Metro N. Commuter R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989); *see also, Cooper*, 510 F.3d at 942

13   (evidence is only admissible under Rule 702 where it "will assist the trier of fact to understand or

14   determine a fact in issue").

15          Fujifilm counters that Dr. Bims's testimony regarding the Nokia 9000i is "misleading" and

16   "deficient," and that Fujifilm "should not be denied the opportunity to explain its deficiencies to

17   the jury."  Opp. 22.  Fujifilm states: "Mr. Haeberli's testimony makes clear that Motorola failed to

18   adduce clear and convincing evidence of public availability, and Mr. Haeberli should be permitted

19   to rebut Motorola's evidence at trial."  Opp. 23.

20          While I agree with Fujifilm that it should be permitted to rebut Motorola's evidence

21   regarding the Nokia 9000i, for the most part, Haeberli's proffered testimony is not an appropriate

22   means of rebutting it.  With one exception, the testimony consists of "simple inferences drawn

23   from uncomplicated facts."  *Rezulin*, 309 F. Supp. 2d at 551.  These inferences are properly raised

24   through cross examination and closing argument, not through expert testimony.  The exception is

25   Haeberli's opinion on whether the Nokia 9000i manuals reviewed by Dr. Bims accurately describe

26   the Nokia 9000i.  Haeberli may offer his opinion on why a product manual of this type may fail to

27   accurately describe the underlying product, and why in this case he believes there is insufficient

28   evidence that the relevant Nokia 9000i manuals accurately describe the Nokia 9000i.  To the

United States District Court
Northern District of California

22

extent Motorola's motion to strike is aimed at this testimony, the motion is DENIED.  To the extent the motion is aimed at other aspects of page 7, line 13 to page 11, line 5 of Haeberli's rebuttal report, the motion is GRANTED.

**CONCLUSION**

For the foregoing reasons, Fujifilm's motion for partial summary judgment is DENIED. Motorola's motion to strike is GRANTED IN PART and DENIED IN PART.  The term "at least one of" as used in claims 1 and 35 of the '119 patent is construed as "one or more of the following."

**IT IS SO ORDERED**.

Dated: March 19, 2015

WILLIAM H. ORRICK
United States District Judge