UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FUJIFILM CORPORATION,

          Plaintiff,

    v.

MOTOROLA MOBILITY LLC,

          Defendant.

Case No. 12-cv-03587-WHO

**FINAL JURY INSTRUCTIONS**

**FINAL JURY INSTRUCTION NO. 1**
**DUTY OF JURY**

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you as to the law of the case.

A copy of these instructions will be sent with you to the jury room when you deliberate.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

2

**FINAL JURY INSTRUCTION NO. 2**
**WHAT IS EVIDENCE**

As I mentioned at the outset, the evidence you are to consider in deciding the facts consists of:

(1) the sworn testimony of any witness;

(2) the exhibits which are received into evidence; and

(3) any facts to which the lawyers have agreed.

## FINAL JURY INSTRUCTION NO. 3
## WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding the facts. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they said in their opening statements and throughout the trial, and what they will say in their closing arguments or at other times are intended to help you interpret the evidence. But these arguments and statements are not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition, sometimes testimony and exhibits are received only for a limited purpose; when I have given a limiting instruction, you must follow it.

(4) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

**FINAL JURY INSTRUCTION NO. 4**
**EVIDENCE FOR A LIMITED PURPOSE**

Some evidence may have been admitted for a limited purpose only.  You must consider it only for that limited purpose and for no other.

United States District Court
Northern District of California

**FINAL JURY INSTRUCTION NO. 5**
**DEMONSTRATIVES IN EVIDENCE**

Certain demonstrative slides have been received into evidence to illustrate information brought out in the trial.  Slides are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

United States District Court
Northern District of California

**FINAL JURY INSTRUCTION NO. 6**
**DEMONSTRATIVES NOT RECEIVED IN EVIDENCE**

Certain demonstrative slides not received in evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. They are not themselves evidence or proof of any facts. If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these slides and determine the facts from the underlying evidence.

United States District Court
Northern District of California

**FINAL JURY INSTRUCTION NO. 7**
**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night.  However, other evidence, such as a turned on garden hose, may provide a different explanation for the presence of water on the sidewalk.  Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

**FINAL JURY INSTRUCTION NO. 8**
**RULING ON OBJECTIONS**

There are rules of evidence that control what can be received into evidence.  When a lawyer asked a question or offered an exhibit into evidence and a lawyer on the other side thought that it was not permitted by the rules of evidence, that lawyer may have objected.  If I overruled the objection, the question was answered or the exhibit received.  If I sustained the objection, the question was not answered, and the exhibit was not received.  Whenever I sustained an objection to a question, you must ignore the question and must not guess what the answer might have been.

United States District Court
Northern District of California

**FINAL JURY INSTRUCTION NO. 9**
**CREDIBILITY OF WITNESSES**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case and any bias or prejudice;

(5) whether other evidence contradicted the witness's testimony;

(6) the reasonableness of the witness's testimony in light of all the evidence; and

(7) any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

**FINAL JURY INSTRUCTION NO. 10**
**IMPEACHMENT EVIDENCE – WITNESS**

The evidence that a witness lied under oath on a prior occasion may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

**FINAL JURY INSTRUCTION NO. 11**
**INTERPRETATION & USE OF INTERPRETERS IN COURT**

Languages other than English were used during this trial.

The evidence to be considered by you is only that provided through the official court interpreters. Although some of you may know Japanese, it is important that all jurors consider the same evidence. Therefore, you must accept the English interpretation. You must disregard any different meaning.

You must not make any assumptions about a witness or a party based solely upon the use of an interpreter to assist that witness or party.

United States District Court
Northern District of California

12

**FINAL JURY INSTRUCTION NO. 12**
**STIPULATIONS OF FACT**

The parties agreed to certain facts that were placed in evidence as Exhibit 1.  You should therefore treat these facts as having been proved.  Stipulated facts numbers 15, 16, and 19 have been withdrawn and should not be considered by you.

United States District Court
Northern District of California

**FINAL JURY INSTRUCTION NO. 13**
**DEPOSITION IN LIEU OF LIVE TESTIMONY**

You heard some witnesses testify by deposition.  A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded.

You should consider deposition testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

United States District Court
Northern District of California

**FINAL JURY INSTRUCTION NO. 14**
**EXPERT OPINION**

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

United States District Court
Northern District of California

**FINAL JURY INSTRUCTION NO. 15**
**BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE**

When a party has the burden of proof on any claim or defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or defense is more probably true than not true. You should base your decision on all of the evidence, regardless of which party presented it.

**FINAL JURY INSTRUCTION NO. 16**
**BURDEN OF PROOF – CLEAR AND CONVINCING EVIDENCE**

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means you must be persuaded by the evidence that the claim or defense is highly probable.  This is a higher standard of proof than proof by a preponderance of the evidence.  You should base your decision on all of the evidence, regardless of which party presented it.

United States District Court
Northern District of California

17

### FINAL JURY INSTRUCTION NO. 17
### SUMMARY OF CONTENTIONS

I will now again summarize for you each side's contentions in this case. I will then tell you what each side must prove to win on each of its contentions.

As I previously told you, Fujifilm filed suit in this court seeking money damages from Motorola Mobility for allegedly infringing the patents in suit by making, importing, using, selling, and offering for sale products that Fujifilm argues are covered by one or more claims of each patent. The asserted claims are claims 1, 2, 7, and 11 of the '763 patent; claim 11 of the '886 patent; claim 1 of the '285 patent; and claims 1, 13, and 35 of the '119 patent. Fujifilm also argues that Motorola Mobility has willfully infringed these claims. The products that are alleged to infringe are certain mobile phones and tablets of Motorola Mobility.

Motorola Mobility denies that it has infringed any of the asserted claims of the patents in suit and argues that, in addition, these claims are invalid. Invalidity is a defense to infringement. Motorola Mobility also denies that it willfully infringed the asserted claims.

Your job will be to decide whether the asserted claims of the patents in suit have been infringed and whether those claims are invalid. If you decide that any asserted claim of the patents in suit has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Fujifilm to compensate it for the infringement. You will also need to make a finding as to whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damage award you give. I will take willfulness into account later.

**FINAL JURY INSTRUCTION NO. 18**
**INTERPRETATION OF CLAIMS**

Before you decide whether Motorola Mobility has infringed the asserted claims of the patent in suit or whether the asserted claims are invalid, you will need to understand the patent claims. As was mentioned in the video you saw at the beginning of the case, the patent claims are numbered sentences at the end of the patent that describes the boundaries of the patent's protection. It is my job as judge to explain to you the meaning of any language in the claims that needs interpretation.

I have interpreted the meaning of some of the language in the patent claims involved in this case. You must accept those interpretations as correct. For some terms, the parties have agreed on an interpretation. You must also accept those interpretations as correct. My interpretation of the language should not be taken as an indication that I have a view regarding the issues of infringement and invalidity. The decisions regarding infringement and invalidity are yours to make.

Now I will read to you the claim terms that have already been interpreted and their respective meanings:

**(1)     U.S. Patent No. 6,144,763**

"Component by component" in claim 1 means "the luminance component and chrominance components, separately."

"Storage for storing the processed image data and allowing the processed image data to be read out in preselected blocks component by component" in claim 1 means "storage for storing the processed image data and for allowing the processed image data to be retrieved from the storage in preselected blocks on a component by component basis."

The preamble of claim 1 does not limit the scope of claim 1.

1

   **(2)      U.S. Patent No. 7,327,886**

2

3      "Detecting a facial position in a frame, which is judged to include a face, if it is judged that

4  the face is included in the frame" in claim 11 means "identifying the location of a human face

5  within frame if it has been previously determined that the frame contains a human face."

6

7      **(3)      U.S. Patent No. 6,915,119**

8

9      "At least one of" in claims 1 and 35 means "one or more of the following."

10

11      "A designating device on said wireless telephone for designating the data for reception by

12  the wireless telephone and for selectively designating an apparatus to which the received data is to

13  be transmitted" in claims 1 and 35 does not exclude "store-and-forward data retransmission."

14

15      For claim terms for which I have not provided you with any meaning, you should apply the

16  claim term's plain and ordinary meaning to a person of ordinary skill in the art.

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**FINAL JURY INSTRUCTION NO. 19**
**THE ROLE OF THE CLAIMS OF A PATENT**

The claims of a patent are important because it is the words of the claims that define what a patent covers.  The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage.  Each claim is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim.  Therefore, what a patent covers depends, in turn, on what each of its claims covers.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid.  The law says that it is my role to define the terms of the claims and it is your role to apply my definitions to the issues that you are asked to decide in this case.  It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity.

**FINAL JURY INSTRUCTION NO. 20**
**HOW A CLAIM DEFINES WHAT IT COVERS**

I will now explain how a claim defines what it covers.

A claim sets forth, in words, a set of requirements.  Each claim sets forth its requirements in a single sentence.  If a device or a method satisfies each of these requirements, then it is covered by the claim.

There can be several claims in a patent.  Each claim may be narrower or broader than another claim by setting forth more or fewer requirements.  The coverage of a patent is assessed claim-by-claim.  In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations."  When a thing (such as a product or a process) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim.  In other words, a claim covers a product or process where each of the claim elements or limitations is present in that product or process.

Sometimes the words in a patent claim are difficult to understand, and therefore it is difficult to understand what requirements these words impose.  It is my job to explain to you the meaning of the words in the claims and the requirements these words impose.

As I just instructed you, there are certain specific terms that I have defined and you are to apply the definitions that I provide to you.

By understanding the meaning of the words in a claim and by understanding that the words in a claim set forth the requirements that a product or process must meet in order to be covered by that claim, you will be able to understand the scope of coverage for each claim.  Once you understand what each claim covers, then you are prepared to decide the issues that you will be asked to decide, such as infringement and invalidity.

**FINAL JURY INSTRUCTION NO. 21**
**INFRINGEMENT – BURDEN OF PROOF**

I will now instruct you on the rules you must follow in deciding whether Fujifilm has proven that Motorola Mobility has infringed one or more of the asserted claims of each of the patents in suit.  To prove infringement of any claim, Fujifilm must persuade you that it is more likely than not that Motorola Mobility has infringed that claim.

**FINAL JURY INSTRUCTION NO. 22**
**DIRECT INFRINGEMENT**

A patent's claims define what is covered by the patent.  A product directly infringes a patent if it is covered by at least one claim of the patent.

Deciding whether a claim has been directly infringed is a two-step process.  The first step is to decide the meaning of the patent claim.  I have already made this decision, and I will instruct you shortly as to the meaning of the asserted patent claims.  The second step is to decide whether Motorola Mobility has made, used, sold, offered for sale or imported within the United States a product covered by a claim of the patents in suit.  If it has, it infringes.  You, the jury, make this decision.

With one exception, you must consider each of the asserted claims of the patent individually, and decide whether Motorola Mobility's products infringe that claim.  The one exception to considering claims individually concerns dependent claims.  A dependent claim includes all of the requirements of a particular independent claim, plus additional requirements of its own.  As a result, if you find that an independent claim is not infringed, you must also find that its dependent claims are not infringed.  On the other hand, if you find that an independent claim has been infringed, you must still separately decide whether the additional requirements of its dependent claims have also been infringed.  The only dependent claims asserted are claims 2, 7, and 11 of the '763 patent, each of which depends from independent claim 1 of the '763 Patent.

You have heard evidence about both Fujifilm's commercial products and Motorola Mobility's accused products.  However, in deciding the issue of infringement you may not compare Motorola Mobility's accused products to Fujifilm's commercial products.  Rather, you must compare each of Motorola Mobility's accused products to the asserted claims it is accused of infringing.

Whether or not Motorola Mobility knew its products infringed or even knew of one or more of the patents in suit does not matter in determining direct infringement.

You should note, however, that what are called "means-plus-function" requirements in a claim are subject to different rules for deciding direct infringement.  These separate rules apply

24

only to claim 11 of the '886 Patent.  I will describe these separate rules shortly.

United States District Court
Northern District of California

**FINAL JURY INSTRUCTION NO. 23**
**LITERAL INFRINGEMENT**

To decide whether Motorola Mobility's products literally infringe a claim of the patents in suit, you must compare those products with the asserted patent claims and determine whether every requirement of the claims is included in each product. If so, Motorola Mobility's product literally infringes that claim. If, however, an accused product of Motorola Mobility does not have every requirement in the patent claim, the accused product of Motorola Mobility does not literally infringe that claim. You must decide literal infringement for each asserted claim separately.

If the patent claim uses the term "comprising," that patent claim is to be understood as an open claim. An open claim is infringed as long as every requirement in the claim is present in Motorola Mobility's products. The fact that Motorola Mobility's products also include other parts will not avoid infringement, as long as they have every requirement in the patent claim.

**FINAL JURY INSTRUCTION NO. 24**
**MEANS-PLUS FUNCTION CLAIMS – LITERAL INFRINGEMENT**

I will now describe the separate rules that apply to the "means-plus-function" requirements that are used in one of the asserted claims. Claim 11 of the '886 patent contains several "means-plus-function" requirements. A means-plus-function requirement recites a "means for" performing a certain function. However, a means-plus-function requirement does not cover all possible structures that could be used to perform the claimed function. Instead, it only covers the specific structure disclosed in the patent specification for performing the claimed function and the equivalents of that specific structure that perform the claimed function.

As an example, the term "means for processing data" might be understood to encompass a variety of different ways of making a calculation, including a computer, a calculator, a pencil and paper or even the human brain. But because the phrase is a means-plus-function requirement, we interpret that phrase not to cover every possible means for processing data, but instead to cover the actual means disclosed in the patent for processing data and other means that are equivalent to it.

For purposes of this trial, the parties have agreed upon each of the means-plus-function requirements in claim 11 of the '886 patent and have identified the structure in the specification that corresponds to these means-plus-function requirements. Specifically, the parties have agreed that:

(1) "Display means for displaying various kinds of information including the image data" is a means-plus-function term. "LCD 40 and equivalents thereof" is the structure that performs the function of "displaying various kinds of information including the image data."

(2) "Photographing means for obtaining image data by taking a photograph of a subject" is a means-plus-function term. "Photographing unit 10 and equivalents thereof" is the structure that performs the function of "obtaining image data by taking a photograph of a subject."

(3) "Release means for performing photographing operation" is a means-plus-function term. "A release button and equivalents thereof" is the structure that performs the function of "performing photographing operation."

In deciding if Fujifilm has proven that Motorola Mobility's accused products include a

structure covered by a means-plus-function requirement, you must first decide whether the products have any structure that performs the function I just described to you.  If not, a claim containing that means-plus-function requirement is not infringed.

If you find that the Motorola Mobility's accused products do have a structure that performs the claimed function, you must then determine whether that structure is the same as or equivalent to the structure I have identified in the specification.  If they are the same or equivalent, the means-plus-function requirement is satisfied by that structure of the accused products.  If all the other requirements of the claim are satisfied, the accused products infringe the claim.

In order to prove that a structure in the accused products is equivalent to the structure described in the '886 patent, Fujifilm must show that a person of ordinary skill in the field would have considered that the differences between the structure described in the '886 patent and the structure in the accused products are not substantial.  Fujifilm must also show that the structure in the accused products was available on the date the '886 patent was granted.

United States District Court
Northern District of California

# FINAL JURY INSTRUCTION NO. 25
## WILLFUL INFRINGEMENT

In this case, Fujifilm argues that Motorola Mobility willfully infringed the Fujifilm's patents. Motorola Mobility denies this allegation.

To prove willful infringement, Fujifilm must first persuade you that Motorola Mobility infringed a valid claim of Fujifilm's patents. The requirements for proving such infringement were discussed in my prior instructions.

In addition, to prove willful infringement, Fujifilm must persuade you that it is highly probable that Motorola Mobility acted with reckless disregard of the claims of Fujifilm's patents.

To demonstrate such "reckless disregard," Fujifilm must persuade you that Motorola Mobility actually knew, or it was so obvious that Motorola Mobility should have known, that its actions constituted infringement of a valid patent.

In deciding whether Motorola Mobility acted with reckless disregard for Fujifilm's patents, you should consider all of the facts surrounding the alleged infringement. Factors that may be considered as evidence of whether Motorola Mobility was or was not willful include:

(1)     Whether Motorola Mobility acted in a manner consistent with the standards of commerce for its industry.

(2)     Whether Motorola Mobility made a good-faith effort to avoid infringing the patents in suit, for example, whether Motorola Mobility attempted to design around the patents in suit.

(3)     Whether Motorola Mobility tried to cover up its infringement.

**FINAL JURY INSTRUCTION NO. 26**
**INVALIDITY – BURDEN OF PROOF**

I will now instruct you on the rules you must follow in deciding whether Motorola Mobility has proven that the asserted claims are invalid.  Before discussing the specific rules, I want to remind you about the standard of proof that applies to this defense.  To prove invalidity of any patent claim, Motorola Mobility must persuade you that it is highly probable that the claim is invalid.

During this case, Motorola Mobility has submitted prior art that was not considered by the United States Patent and Trademark Office (PTO) during the prosecution of the patents in suit. Motorola Mobility contends that such prior art invalidates certain claims of those patents.  In deciding the issue of invalidity, you may take into account the fact that the prior art was not considered by the PTO when it issued the patents.  Prior art that differs from the prior art considered by the PTO may carry more weight than the prior art that was considered and may make Motorola Mobility's burden of showing that it is highly probable that a patent claim is invalid easier to sustain.

# FINAL JURY INSTRUCTION NO. 27
## ANTICIPATION

A patent claim is invalid if the claimed invention is not new.  Here is a list of the ways that Motorola Mobility can show that a patent claim was not new:

(1) if the claimed invention was already publicly known or publicly used by others in the United States before the date of the invention;

(2) if the claimed invention was already patented or described in a printed publication anywhere in the world before the date of the invention.  A reference is a "printed publication" if it is accessible to those interested in the field, even if it is difficult to find;

(3) if the claimed invention was already described in another issued U.S. patent or published U.S. patent application that was based on a patent application filed before the date of the invention.

For the claim to be invalid because it is not new, all of its requirements must have existed in a single device or method that predates the claimed invention, or must have been described in a single previous publication or patent that predates the claimed invention.  In patent law, these previous devices, methods, publications, or patents are called "prior art references."  If a patent claim is not new we say it is "anticipated" by a prior art reference.

The description in the written reference does not have to be in the same words as the claim, but all of the requirements of the claim must be there, either stated or necessarily implied, so that someone of ordinary skill in the relevant field looking at that one reference would be able to make and use the claimed invention.

The "date of the invention" for each of the patents in suit is: October 29, 1999 for the '119 patent, March 24, 1997, for the '763 patent, and January 21, 2004, for the '886 and '285 patents.

# FINAL JURY INSTRUCTION NO. 28
## OBVIOUSNESS

Not all innovations are patentable.  A patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the relevant field at the relevant time, even if all of the requirements of the claim cannot be found in a single prior art reference that would anticipate the claim or constitute a statutory bar to that claim.  The relevant dates for the patents in suit are as follows: October 29, 1999 for the '119 patent; March 24, 1997 for the '763 patent; and January 21, 2004 for the '886 and '285 patents.  A patent claim is obvious if a person of ordinary skill in the relevant field who knew about all this prior art would have come up with the claimed invention.

The ultimate conclusion of whether a claim is obvious should be based upon your determination of several factual decisions.

First, you must decide the level of ordinary skill in the field that someone would have had at the time.  In deciding the level of ordinary skill, you should consider all the evidence introduced at trial, including:

(1)        the levels of education and experience of persons working in the field;

(2)        the types of problems encountered in the field; and

(3)        the sophistication of the technology.

Fujifilm contends that:

(a)        the relevant field of art for purposes of the '763 ("monochrome") patent is digital image processing in digital still cameras, and that the level of ordinary skill in the field was at least a bachelor's degree in electrical or computer engineering and at least three years of experience designing digital cameras;

(b)        the relevant field of art for purposes of the Face Detection Patents is object or face detection in digital cameras, and that the level of ordinary skill in the field was at least a bachelor's degree in electrical or computer engineering and four to five years experience designing digital cameras or a master's degree in electrical or computer engineering and one to two years of experience designing digital cameras; and

(c)    the relevant field of art for purposes of the '119 ("data transmitting") patent is the wireless reception and transmission of data from mobile phones, and that the level of ordinary skill in the field was a bachelor's degree in electrical engineering, computer science, or a related field, and two to four years of experience working with networking, communications, digital cameras, and/or embedded devices;

Motorola contends that:

(a)    the relevant field of art for purposes of the '763 ("monochrome") patent is image processing, and that the level of ordinary skill in the field was a graduate degree (or relevantly equivalent experience) in a relevant technical field such as electrical engineering, mathematics, or computer graphics, as well as some applied experience. Relevantly equivalent experience or training would include, for example, five or more years of experience with image processing, including analog or digital image processing and image compression;

(b)    the relevant field of art for purposes of the Face Detection Patents is face or object detection in images, and that the level of ordinary skill in the field was a graduate degree (or relevantly equivalent experience) in a relevant technical field such as electrical engineering, computer science, mathematics, or computer graphics, as well as some applied experience. Relevantly equivalent experience or training would include, for example, five or more years of experience with image processing; and

(c)    the relevant field of art for purposes of the '119 ("data transmitting") patent is mobile data communications, and that the level of ordinary skill in the field was a bachelor's degree or advanced degree in electrical engineering or its equivalent, plus a few years of work experience in mobile device development, with a general knowledge of baseband transceiver designs, and mobile device user interfaces.

Second, you must decide the scope and content of the prior art. In order to be considered as prior art to the patents in suit, these references must be reasonably related to the claimed invention of that patent. A reference is reasonably related if it is in the same field as the claimed invention or is from another field to which a person of ordinary skill in the field would look to solve a known problem.

Third, you must decide what difference, if any, existed between the claimed invention and the prior art.

Finally, you should consider any of the following factors that you find have been shown by the evidence:

(1)     commercial success of a product due to the merits of the claimed invention;

(2)     a long felt need for the solution provided by the claimed invention;

(3)     unsuccessful attempts by others to find the solution provided by the claimed invention;

(4)     copying of the claimed invention by others;

(5)     unexpected and superior results from the claimed invention;

(6)     acceptance by others of the claimed invention as shown by praise from others in the field or from the licensing of the claimed invention;

(7)     other evidence tending to show nonobviousness;

(8)     independent invention of the claimed invention by others before or at about the same time as the named inventor thought of it; and

(9)     other evidence tending to show obviousness.

The presence of any of the factors 1-7 may be considered by you as an indication that the claimed invention would not have been obvious at the time the claimed invention was made, and the presence of the factors 8-9 may be considered by you as an indication that the claimed invention would have been obvious at such time.  Although you should consider any evidence of these factors, the relevance and importance of any of them to your decision on whether the claimed invention would have been obvious is up to you.

A patent claim composed of several elements is not proved obvious merely by demonstrating that each of its elements was independently known in the prior art.  In evaluating whether such a claim would have been obvious, you may consider whether Motorola Mobility has identified a reason that would have prompted a person of ordinary skill in the field to combine the elements or concepts from the prior art in the same way as in the claimed invention.  There is no single way to define the line between true inventiveness on the one hand (which is patentable) and

United States District Court
Northern District of California

34

the application of common sense and ordinary skill to solve a problem on the other hand (which is not patentable).  For example, market forces or other design incentives may be what produced a change, rather than true inventiveness.  You may consider whether the change was merely the predictable result of using prior art elements according to their known functions, or whether it was the result of true inventiveness.  You may also consider whether there is some teaching or suggestion in the prior art to make the modification or combination of elements claimed in the patent.  Also, you may consider whether the innovation applies a known technique that had been used to improve a similar device or method in a similar way.  You may also consider whether the claimed invention would have been obvious to try, meaning that the claimed innovation was one of a relatively small number of possible approaches to the problem with a reasonable expectation of success by those skilled in the art.

However, you must be careful not to determine obviousness using the benefit of hindsight; many true inventions might seem obvious after the fact.  You should put yourself in the position of a person of ordinary skill in the field at the relevant time and you should not consider what is known today or what is learned from the teaching of the patent.

**FINAL JURY INSTRUCTION NO. 29**
**INVENTORSHIP**

Motorola Mobility can meet its burden of proving that a patent is invalid by showing that it fails to name all actual inventors and only the actual inventors. This is known as the "inventorship" requirement.

To be an inventor, one must make a significant contribution to the conception of one or more claims of the patent. Persons may be inventors even though they do not physically work together or make the same type or amount of contribution, or contribute to the subject matter of each claim of the patent. However, merely helping with experimentation by carrying out the actual inventor's instructions or explaining the actual inventor's well-known concepts or the current state of the art does not make someone an inventor.

**FINAL JURY INSTRUCTION NO. 30**
**DAMAGES – BURDEN OF PROOF**

I will instruct you about the measure of damages.  By instructing you on damages, I am not suggesting which party should win on any issue.  If you find that Motorola Mobility infringed a valid claim of the patents in suit, you must then determine the amount of money damages to be awarded to Fujifilm to compensate it for the infringement.

The amount of those damages must be adequate to compensate Fujifilm for the infringement.  A damages award should put the patent holder in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty.  You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.

Fujifilm has the burden to persuade you of the amount of its damages.  You should award only those damages that Fujifilm more likely than not suffered.  While Fujifilm is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty.  Fujifilm is not entitled to damages that are remote or speculative.

**FINAL JURY INSTRUCTION NO. 31**
**REASONABLE ROYALTY – DEFINITION**

Fujifilm is seeking a reasonable royalty as its damages.  A royalty is a payment made to the owner of a patent by a non-owner in exchange for the right to make, use or sell the claimed invention.  This right is called a "license."  A reasonable royalty is the payment for the license that would have resulted from a hypothetical negotiation between the patent owner and the infringer taking place at the time when the infringing activity first began.  In considering the nature of this negotiation, you must assume that the patent owner and the infringer would have acted reasonably and would have entered into a license agreement.  You must also assume that both parties believed the asserted claims were valid and infringed.  Your role is to determine what the result of that negotiation would have been.  The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

In determining a reasonable royalty, you may consider the following factors:

(1) The royalties received by Fujifilm for the licensing of the patents in suit.

(2) The rates paid by Motorola Mobility for the use of other patents comparable to the patents in suit.

(3) The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4) Fujifilm's established policy and marketing program to maintain its patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5) The commercial relationship between Fujifilm and Motorola Mobility, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6) The effect, if any, of selling the patented specialty in promoting sales of other products of Motorola Mobility, the existing value of the invention to Fujifilm as a generator of sales of its nonpatented items, and the extent of such derivative or convoyed sales.

(7) The duration of the patents in suit and the term of the license.

38

(8) The established profitability of products, if any made under the patent, their commercial success, and the current popularity.

(9) The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10) The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by Fujifilm, and the benefits to those who have used the invention.

(11) The extent to which Motorola Mobility has made use of the invention and any evidence probative of the value of that use.

(12) The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13) The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by Motorola Mobility.

(14) The opinion and testimony of qualified experts.

(15) The amount that a licensor (such as Fujifilm) and a licensee (such as Motorola Mobility) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors.  You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.

**FINAL JURY INSTRUCTION NO. 32**
**DATE OF COMMENCEMENT – PRODUCTS**

Damages that Fujifilm may be awarded by you commence on the date that Motorola Mobility has both infringed and been notified of the patents in suit.

Fujifilm and Motorola Mobility agree that date was as follows for each of the patents in suit:  April 20, 2011 for the '763 patent, the '119 patent, and the '886 patent; and November 8, 2012 for the '285 patent.

United States District Court
Northern District of California

**FINAL JURY INSTRUCTION NO. 33**
**LICENSING DEFENSE**

Motorola Mobility contends that it is licensed to sell the Bluetooth-related components of its accused devices under the Bluetooth Patent/Copyright License Agreement ("BPLA"). Motorola Mobility bears the burden of proving its licensing defense by a preponderance of the evidence.  To succeed on its licensing defense, Motorola Mobility must show that the BPLA is a valid and enforceable agreement as applied to Fujifilm and, with respect to one or more of claims 1, 13, and 35 of the '119 patent, that such claim or claims meet the definition of "Necessary Claim," as provided in the BPLA.

**FINAL JURY INSTRUCTION NO. 34**
**RETURN OF VERDICT**

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.

**FINAL JURY INSTRUCTION NO. 35**
**DUTY TO DELIBERATE**

When you begin your deliberations, you should elect one member of the jury as your presiding juror.  That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so.  Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should.  Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision.  Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

**FINAL JURY INSTRUCTION NO. 36**
**TAKING NOTES**

You may have taken notes during the trial.  Whether or not you took notes, you should rely on your own memory of the evidence.  Notes are only to assist your memory.  You should not be overly influenced by your notes or those of your fellow jurors.

United States District Court
Northern District of California

**FINAL JURY INSTRUCTION NO. 37**
**CONSIDERATION OF EVIDENCE – CONDUCT OF JURY**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves.  Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone or electronic means, via email, text messaging, or any Internet chat room, blog, website or other feature.  This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial.  If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.

The law requires these restrictions to ensure the parties have a fair trial based on the same evidence that each party has had an opportunity to address.  A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over.  If any juror is exposed to any outside information, please notify the court immediately.

United States District Court
Northern District of California

45

**FINAL JURY INSTRUCTION NO. 38**
**COMMUNICATION WITH COURT**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the Bailiff, signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court.  If you send out a question, I will consult with the parties before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.  Do not disclose any vote count in any note to the court.