1

2

3        UNITED STATES DISTRICT COURT

4        NORTHERN DISTRICT OF CALIFORNIA

5

6    FUJIFILM CORPORATION,                    Case No. 12-cv-03587-WHO

           Plaintiff,
7                                             **ORDER ON PLAINTIFF'S AND
           v.                                 DEFENDANT'S MOTIONS FOR
8                                             JUDGMENT AS MATTER OF LAW OR
                                              FOR A NEW TRIAL, AND ON
9    MOTOROLA MOBILITY LLC,                   PLAINTIFF'S MOTION TO ALTER OR
                                              AMEND THE JUDGMENT**
           Defendant.
10
                                             Re: Dkt. Nos. 361, 362, 363
11
                              **INTRODUCTION**
12
             In this lawsuit involving technology used in digital cameras and cellular telephones, a jury
13
     found defendant Motorola Mobility LLC ("Motorola") liable for infringement of plaintiff Fujifilm
14
     Corporation ("Fujifilm")'s U.S. Patent No. 6,144,763 (the '763 patent), which concerns
15
     monochrome conversion in digital photography, and awarded $10.24 million in damages after a
16
     two-week trial.  The jury also considered Fujifilm's claims of infringement of U.S. Patents Nos.
17
     8,306,285 (the '285 patent) and 7,327,886 (the '886 patent), which concern human face detection
18
     in digital photography, and U.S. Patent No. 6,915,119 (the '119 patent), which concerns wireless
19
     data transmission.  The jury found that the '285 and '886 patents were invalid and not infringed,
20
     and that the '119 patent was infringed but invalid.  Each party now moves for judgment as a
21
     matter of law or for a new trial on virtually every issue on which the jury did not find in its favor.
22
     In addition, Fujifilm moves under Federal Rule of Civil Procedure 59(e) to alter or amend the
23
     judgment to provide for an award of prejudgment interest.
24
             This Order upholds the jury verdict, except that Fujifilm is entitled to judgment as a matter
25
     of law on the validity of the asserted claims of the '285 and '886 patents (the "face detection
26
     patents") and on Motorola's licensing defense concerning claims 1 and 35 of the '119 patent.  I
27
     also award prejudgment interest at the prime rate, compounded quarterly.  Fujifilm's motion for
28

United States District Court
Northern District of California

United States District Court
Northern District of California

1  JMOL or for a new trial is GRANTED IN PART and DENIED IN PART, Motorola's motion is

2  DENIED, and Fujifilm's motion to alter or amend the judgment is GRANTED.

3  **BACKGROUND**

4      Fujifilm filed its original complaint in this matter on July 10, 2012 and its first amended

5  complaint on November 19, 2012.  Dkt. Nos. 1, 16.  The first amended complaint, the operative

6  complaint in this case, asserts infringement by Motorola of Fujifilm's '763 patent, '285 patent,

7  '886 patent, '119 patent, and U.S. Patent No. 5,734,427 (the '427 patent) (which concerns low-

8  resolution displays in digital cameras).  Dkt. No. 16.

9      On December 9, 2014, Motorola moved for summary judgment of noninfringement on

10  each of the asserted claims, and also on the issue of willful infringement.  Dkt. No. 153.  I granted

11  the motion with respect to the '427 patent and denied the motion in all other respects.  Dkt. No.

12  196 ("Summary Judgment Order").

13      A jury trial was held from April 20 through May 1, 2015.  At trial, Fujifilm asserted

14  infringement of claims 1, 2, 7, and 11 of the '763 patent; claim 1 of the '285 patent; claim 11 of

15  the '886 patent; and claims 1, 13, and 35 of the '119 patent.

16      At the close of Fujifilm's case, Motorola moved for judgment as a matter of law on all

17  claims of infringement, including willful infringement, and on damages.  Dkt. No. 307.  At the

18  close of all evidence, Motorola renewed its request for judgment as a matter of law on

19  infringement of the '886 patent and on willful infringement, and also moved for judgment as a

20  matter of law on the validity on each of the asserted claims.  Dkt. No. 328.  Fujifilm moved for

21  judgment as a matter of law on all claims of infringement, including willful infringement, on the

22  validity of each of the asserted claims, on the licensing of the asserted claims of the '119 patent,

23  and on damages.  Trial Tr. at 1757:20-1759:04.  I allowed all issues to pass to the jury.  *Id.* at

24  1761:21-23.

25      The jury returned its verdict on May 4, 2015.  Dkt. No. 337 ("Verdict").  It found that

26  Motorola had infringed claims 1, 7, and 11 of the '763 patent and claims 1, 13, and 35 of the '119

27  patent, but that it had not infringed claim 2 of the '763 patent, claim 1 of the '285 patent, or claim

28  11 of the '886 patent.  Verdict at 3-4.  It also found that claims 1, 2, 7, and 11 of the '763 patent

2

were not invalid, but that claim 1 of the '285 patent, claim 11 of the '886 patent, and claim 13 of the '119 patent were invalid as anticipated and obvious, and that claims 1 and 35 of the '119 patent were invalid as obvious.  *Id.* at 5.  In addition, the jury found that the '119 patent was not invalid for improper inventorship, and that Motorola was licensed under the Bluetooth Patent/Copyright License Agreement ("BPLA") (Trial Ex. 901) as to claims 1 and 35 of the '119 patent, but not as to claim 13 of the '119 patent.  *Id.* at 6.  The jury awarded $10.24 million to Fujifilm for past and future damages for infringement of the '763 patent.  *Id.* at 8.  I entered Final Judgment on August 6, 2015.  Dkt. No. 357.

The parties filed their respective post-trial motions on September 3, 2015.  I heard argument on December 9, 2015.  Dkt. No. 379.

## LEGAL STANDARD

The Federal Circuit "reviews decisions on motions for JMOL, motions for a new trial, and evidentiary rulings under the law of the regional circuit."  *InTouch Techs., Inc. v. VGO Commc'ns, Inc.*, 751 F.3d 1327, 1338 (Fed. Cir. 2014).  In the Ninth Circuit, judgment as a matter of law is appropriate where "the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to that of the jury."  *White v. Ford Motor Co.*, 312 F.3d 998, 1010 (9th Cir. 2002).  This standard requires a court to uphold "any jury verdict supported by substantial evidence," substantial evidence being "evidence that a reasonable mind would accept as adequate to support a conclusion."  *Callicrate v. Wadsworth Mfg., Inc.*, 427 F.3d 1361, 1366 (Fed. Cir. 2005).  Neither a "mere scintilla" of evidence, nor pure speculation, is enough to sustain a verdict against a motion for JMOL.  *Lakeside-Scott v. Multnomah Cty.*, 556 F.3d 797, 802-03 (9th Cir. 2009).

Under Federal Rule of Civil Procedure 59(a), a trial court "may grant a new trial, even though the verdict is supported by substantial evidence, if the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice."  *United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir. 1999) (internal quotation marks omitted); *accord Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1313 (Fed. Cir. 2010).  In considering a motion for

United States District Court
Northern District of California

1    a new trial, a court "has the duty to weigh the evidence as the court saw it, and to set aside the

2    verdict of the jury, even though supported by substantial evidence, where, in the court's

3    conscientious opinion, the verdict is contrary to the clear weight of the evidence." *Molski v. M.J.*

4    *Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (internal quotation marks and alterations omitted).

5    The Ninth Circuit "review[s] [a] district court's ruling on a motion for a new trial under Rule 59(a)

6    for an abuse of discretion." *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 962 (9th Cir.

7    2009).  The denial of a motion for a new trial is reversible "only if the record contains no evidence

8    in support of the verdict or if the district court made a mistake of law." *Id.* (internal quotation

9    marks omitted).

10                                          **DISCUSSION**

11          Fujifilm moves for judgment as a matter of law that: (1) Motorola has infringed the face

12   detection patents; (2) the asserted claims of the face detection patents are not invalid; (3) claims 1,

13   13, and 35 of the '119 patent are not invalid; and (4) Motorola is not licensed under the BPLA to

14   practice claims 1 and 35 of the '119 patent.  Fujifilm Mot. at 1 (Dkt. No. 362).  In the alternative,

15   Fujifilm requests a new trial on each of these issues.  *Id.*  Fujifilm also requests a new trial as to

16   willfulness and damages with respect to Motorola's infringement of the face detection patents and

17   of the '119 patent.  *Id.*

18          Motorola moves for judgment as a matter of law that: (1) it has not infringed claims 1, 13,

19   and 35 of the '119 patent; (2) it has not infringed claims 1, 7, and 11 of the '763 patent; (3) the

20   asserted claims of the '763 patent are invalid; and (4) the lump sum award of $10.24 million for

21   infringement of the '763 patent is not supported by the evidence and is excessive.  Motorola Mot.

22   at i (Dkt. No. 361).  In the alternative, it asks for a new trial (and, with respect to damages,

23   remittitur) on each of these issues.  *Id.*  Motorola identifies no basis for ordering a new trial on any

24   of the infringement or validity issues except to state that "for each of the reasons outlined in [its

25   motion for JMOL], the jury's verdict is clearly not supported by the evidence and is

26   unreasonable."  *Id.* at 41.

27          I address the parties' arguments by patent, starting with the face detection patents, then the

28   '119 patent, and finally the '763 patent.  I then address Fujifilm's request under Federal Rule of

United States District Court
Northern District of California

4

Civil Procedure 59(e) for an award of prejudgment interest.  I uphold the jury's verdict except for the finding of invalidity of the face detection patents, because the prior art reference on which Motorola relied did not anticipate or make obvious the asserted claims of those patents, and the finding on the licensing of claims 1 and 35 of the '119 patent, because the plain language of the BPLA compels the conclusion that Motorola was not granted a license to those claims.  With respect to the other issues raised by the parties, I cannot find that the jury's verdict was either unreasonable or contrary to the clear weight of the evidence.

## I.      THE FACE DETECTION PATENTS

The face detection patents share a specification and are titled "Photographing Apparatus, Method and Program."  '285 patent (Trial Ex. 8); '886 patent (Trial Ex. 6).  Claim 1 of the '285 patent discloses:

> A photographing apparatus comprising:
>
> a photographing means for obtaining image data by taking a photograph of a subject;
>
> a display means for displaying various kinds of information including the image data;
>
> a release means for performing photographing operation;
>
> a storage means for storing various kinds of information including the image data;
>
> a photographing control means for obtaining a moving image of the subject by continuously taking photographs with the photographing means and displaying the moving image on the display means;
>
> a face judgment means for performing processing, in a predetermined time interval, for judging whether a human face is included in a frame included in the moving image until a positive result is obtained in the judgment;
>
> a face detection means for detecting a facial position in a frame, which is judged to include a face, if the face judgment means judges that the face is included in the frame;
>
> and a control means for controlling the photographing means, the face judgment means, the face detection means, and the storage means so that the detected facial position is stored in the storage means, judgment is made as to whether the face is included in the next frame after the predetermined time, and if the judgment is positive, the facial position is detected, the facial position, which is stored in the storage means, is replaced by the newly detected facial

United States District Court
Northern District of California

position and the newly detected facial position is stored in the storage means, and until the release means performs the photographing operation, judgment is made as to whether the face is included in the next frame further after the predetermined time, and if it is judged that the face is included in the frame, the facial position is detected, and the newly detected facial position is stored in the storage means, and a frame obtained when the release means performs the photographing operation and/or a plurality of temporally precedent and/or subsequent frames of the obtained frame are stored in the storage means as the image data.

'285 patent at 18:34-67.  Claim 11 of the '885 patent discloses a substantially similar invention:

A computer readable medium storing program for causing a computer to execute an image processing method at a photographing apparatus including a photographing means for obtaining image data by taking a photograph of a subject, a display means for displaying various kinds of information including the image data, a release means for performing photographing operation, a storage means for storing various kinds of information including the image data, and a photographing control means for obtaining a moving image of the subject by continuously taking photographs with the photographing means and displaying the moving image on the display means, the program comprising the procedures for:

performing processing, in a predetermined time interval, for judging whether a human face is included in a frame included in the moving image until a positive result is obtained in the judgment;

detecting a facial position in a frame, which is judged to include a face, if it is judged that the face is included in the frame;

and storing the detected facial position in the storage means, judging whether the face is included in the next frame after the predetermined time, and if the judgment is positive, detecting the facial position, replacing the facial position, which is stored in the storage means, by the newly detected facial position and storing the newly detected facial position in the storage means, and until the release means performs the photographing operation, judging whether the face is included in the next frame further after the predetermined time, and if it is judged that the face is included in the frame, detecting the facial position, and storing the newly detected facial position in the storage means, and storing a frame, which is obtained when the release means performs the photographing operation and/or a plurality of temporally precedent and/or subsequent frames of the obtained frame in the storage means as the image data.

'886 patent at 21:06-22:20.  Fujifilm challenges the jury's findings of invalidity and noninfringement of these claims.  *See* Fujifilm Mot. at 4-27; Fujifilm Reply at 2-13 (Dkt. No. 375).

United States District Court
Northern District of California

### A.    Invalidity

The jury found claim 1 of the '285 patent and claim 11 of the '886 invalid as both anticipated and obvious.  Verdict at 5.  Fujifilm contends that these findings were unreasonable and moves for judgment as a matter of law or a new trial.

### 1.    Anticipation

"Anticipation requires clear and convincing proof that a single prior art reference not only discloses all of the elements of the claim within the four corners of the document, but also discloses those elements arranged as in the claim." *Cheese Sys., Inc. v. Tetra Pak Cheese & Powder Sys., Inc.*, 725 F.3d 1341, 1351 (Fed. Cir. 2013) (internal quotation marks and alterations omitted).  The reference may disclose the elements of the claim either "expressly or inherently." *Trintec Indus., Inc. v. Top-U.S.A. Corp.*, 295 F.3d 1292, 1295 (Fed. Cir. 2002).  "Inherent anticipation requires that the missing descriptive material is 'necessarily present,' not merely probably or possibly present, in the [reference]." *Id.*; *see also Bettcher Indus., Inc. v. Bunzl USA, Inc.*, 661 F.3d 629, 639 (Fed. Cir. 2011) (inherent anticipation "may not be established by probabilities or possibilities").  "The dispositive question regarding anticipation is whether one skilled in the art would reasonably understand or infer from the prior art reference's teaching that every claim limitation was disclosed in that single reference." *Akamai Techs., Inc. v. Cable & Wireless Internet Servs., Inc.*, 344 F.3d 1186, 1192 (Fed. Cir. 2003) (internal quotation marks and alterations omitted).

Motorola's anticipation case at trial centered on U.S. Patent No. 7,269,292 to Steinberg ("Steinberg" or "Steinberg patent") (Trial Ex. 960).  Fujifilm contends that the jury could not have reasonably concluded that Steinberg anticipates the asserted claims of the face detection patents because Steinberg does not disclose the "multiple face judgments" required by those claims.  *See* Fujifilm Mot. at 14-16.  Fujifilm points to the language in claim 1 of the '285 patent requiring "a judgment . . . as to whether the face is included in a first frame of the moving image," and then "[a] judgment . . . as to whether the face is included in a second frame of the moving image."  '285 patent at 18:54-59.  Claim 11 of the '886 patent similarly requires "judging whether a human face is included in a frame included in the moving image," then "judging whether the face is included

1    in the next frame after the predetermined time," and then "judging whether the face is included in

2    the next frame further after the predetermined time." '886 patent at 21:20-22:13.  The relevant

3    portion of Steinberg is a flow diagram that includes a box stating, "Track face movement,"

4    without further explanation.  *See* Steinberg at Fig. 7b.  Fujifilm asserts that, rather than "multiple

5    face judgments," Steinberg discloses "a single face judgment, followed by face tracking."

6    Fujifilm Mot. at 14.

7         In response, Motorola essentially argues that there was substantial evidence at trial

8    indicating that there is no difference between performing "multiple face judgments," as required

9    by the face detection patents, and performing "face tracking," as disclosed by Steinberg.  *See*

10   Motorola Oppo. at 11-14 (Dkt. No. 373).

11        I agree with Fujifilm that there was insufficient evidence at trial to support this conclusion.

12   The parties do not dispute that to perform "multiple face judgments" within the meaning of the

13   face detection patents, there must be successive determinations of whether an object in the image

14   is a human face – that is, there must be multiple instances of "face detection," or "determin[ing]

15   *whether there is a face in the image* and, if there is, determin[ing] [its] coordinates."  Motorola

16   Oppo. at 12 (emphasis added).[1]  By contrast, the jury was told that "face tracking" does not

17   necessarily involve repeatedly determining whether the tracked object is indeed a human face.

18   Fujifilm's expert, Dr. Kenneth Castleman, testified that "[i]n this field, tracking generally means

19   keeping track of the location of something as it moves in a series of frames," and that "there are a

20   lot of [tracking] techniques that don't determine what the object is you're tracking; just, did the

21   thing . . . in the last frame move? and where did it move to?"  Trial Tr. at 1576:06-20; *see also id.*

22   at 1577:10-12 ("So the point is, with tracking you're keeping track of where the object is and

23   where it has been, but you are not, generally, making a determination of what the object is.").  Dr.

24   Castleman then addressed Steinberg in particular and opined that it does not disclose all of the

25   elements of the face detection patents because "[i]t finds the face one time and does not do the step

26

27   _____

     [1] The parties vigorously dispute whether the face detection patents require successive
     determinations of whether the image includes *the same* human face (as opposed to just *some*
28   human face).  But they do not dispute that the face detection patents require successive
     determinations of whether an object in the image is a human face.

United States District Court
Northern District of California

of repeatedly finding the face or making a judgment that there's a face in the image. It's just not in there." *Id.* at 1599:23-1600:01. The jury also heard testimony that Motorola had previously employed "face tracking" but had abandoned that process in favor of one that "serially continues to detect faces and identify the location of those faces, frame by frame by frame." *Id.* at 1434:03-07; *see also* Trial Ex. 505. In line with this evidence, Motorola explicitly conceded in its motion for JMOL at the close of all evidence that the prior art did not disclose "multiple face judgments." *See* Dkt. No. 328 at 20. It stated: "The only thing that was not specifically disclosed in the prior art was performing these [face detection] techniques more than once." *Id.*

Motorola now points to excerpts from the testimony of its expert, Dr. Alan Bovik, as substantial evidence of an equivalence between the "multiple face judgments" required by the face detection patents and the "face tracking" disclosed by Steinberg. S*ee* Motorola Oppo. at 11-12. For the most part, however, the excerpts merely reinforce the conclusion that to perform the "multiple face judgments" required by the face detection patents, there must be successive instances of determining whether there is a human face in the image. *See* Trial Tr. at 1312:04-1313:02; *id.* at 1323:13-20; *id.* at 1328:11-14. The excerpts do not indicate that the "face tracking" disclosed by Steinberg involves such a process. The one possible exception is Dr. Bovik's testimony that "face tracking" is the "process of predicting where the face is in the next frame and then making a face detector operate around that region," and his subsequent testimony that the "Track face movement" box in Steinberg shows that "[o]ver frames, face tracking is being conducted." *Id.* at 1312:24-1313:02, 1342:17. But even assuming that this testimony provided a substantial basis for the conclusion that "face tracking" can involve "multiple face judgments," there was not sufficient evidence to conclude that this is the type of "face tracking" disclosed by Steinberg. As stated above, "[i]nherent anticipation requires that the missing descriptive material is 'necessarily present,' not merely probably or possibly present, in the [reference]." *Trintec*, 295 F.3d at 1295. Motorola identifies nothing in Steinberg regarding the "face tracking" reflected in the "Track face movement" box other than the box itself. I agree with Fujifilm that this passing reference, even when considered in combination with Dr. Bovik's testimony, does not provide a substantial basis for the conclusion that the "face tracking" disclosed in Steinberg necessarily

9

United States District Court
Northern District of California

1    involves "multiple face judgments."

2         Motorola also relies on the following testimony from Dr. Castleman's cross-examination

3    regarding the meaning of "face tracking" and the sort of "face tracking" disclosed by Steinberg:

4              Q. Now, we talked about your definition of . . . tracking
               objects or tracking a face. And I think . . . we've confirmed
5              that "tracking" means "keeping track of the location of
               something as it moves in a series of frames"?

6              A. Yes.

7              Q. Okay. So to do that – to track something in a series of
               frames – that means you've got successive frames. Right?
8

9              A. Yes.

10             Q. And you find that object in the first of this series of
               frames. Right?
11

12             A. Yes.

13             Q. And you figure out its position?

14             A. Correct.

15             Q. And then if you're tracking, you go to the next frame, and
               you find if the object is in that next frame. Right?

16             A. Yes.

17             Q. And you determine its position?

18             A. Yes.

19             Q. And then you go on to the third frame, and you find if the
               object is in the third frame, and then you determine its
20             position. Right?

21             A. Yes.

22             Q. Okay. And that's the process that's referred to by "Track
               face movement" in Box 784 of the Steinberg patent?
23

24             A. We can assume it is, but there's no text to go with this
               figure to tell us exactly what that box does.

25   Trial Tr. at 1624:18-1625:19.  Motorola contends that this testimony amounts to an admission that

26   "a person of skill in the art reading *Steinberg* would know that once a face is detected in a frame,

27   the system should determine whether that face is present in successive frames and, if so, determine

28   the position of the face in each of the successive frames."  Motorola Oppo. at 14.  If that is an

                                                    10

accurate characterization of Dr. Castleman's testimony, it is not a characterization that helps Motorola.  Under this characterization, Dr. Castleman did not testify that Steinberg discloses the use of "multiple face judgments."  Rather, he testified that Steinberg discloses a system that detects a human face in a frame and then "determine[s] whether that face is present in successive frames." *Id.*  Motorola does not dispute that this type of "face tracking" is different from performing "multiple face judgments," i.e., repeatedly "determin[ing] whether there is a face in the image." *Id.* at 12.

The evidence at trial did not provide a substantial basis for finding, by clear and convincing evidence, that Steinberg anticipates the asserted claims of the face detection patents.  Accordingly, Fujifilm's motion for JMOL on this issue is GRANTED.[2]  Its request for a new trial is DENIED AS MOOT.

### 2.    Obviousness

Without the finding of anticipation, the finding of obviousness cannot stand either. Motorola concedes that the only obviousness theory it presented at trial with respect to the face detection patents was predicated on Steinberg combined with the skill and knowledge of a person of ordinary skill in the art.  *See* Motorola Oppo. at 15-16.  The problem is that Motorola did not actually present this theory to the jury.  Dr. Bovik's testimony regarding Steinberg was focused exclusively on anticipation and did not address obviousness.  For example, he introduced his analysis of claim 11 of the '886 patent and Steinberg as follows:

> Q: [H]ow did you go about determining whether claim 11 is invalid . . . in light of Steinberg?
>
> A: Well, I made a limitation-by-limitation comparison between the elements of claim 11, and what is explained in the Steinberg patent; what is revealed in the Steinberg patent.
>
> Q: And why did you do that element-by-element comparison?
>
> A: Well, in order for a piece of prior art to render a claim invalid, you have to find every element of that claim in that piece of prior art.

---

[2] I do not address Fujifilm's other arguments for JMOL on anticipation of the face detection patents.

[ . . . ]

Q: Okay. So we have on the screen claim [11] of the '886 patent. And you've got some – some boxes on the right. Are those check boxes?

A: That's correct. So I'll check each of those off . . . as I show you where those elements are met in the Steinberg reference.

Trial Tr. at 1338:24 to 1339:18-23.

Motorola identifies no testimony by Dr. Bovik or any other witness that addresses the alleged obviousness of the face detection patents. *See* Motorola Oppo. at 15-16.[3]  Without a defensible finding of anticipation or any testimony directed at Motorola's purported obviousness theory, the obviousness verdict is not supported by substantial evidence. *See InTouch*, 751 F.3d at 1348-49 (holding that patentee was entitled to judgment as a matter of law of nonobviousness where defendant's expert did not "identify sufficient reasons or motivations to combine the asserted prior references," "focus on the relevant time frame," or "consider any objective evidence of nonobviousness.").  Fujifilm's motion for JMOL on this issue is GRANTED.  Its motion for a new trial is DENIED AS MOOT.

## B.    Noninfringement

While Fujifilm is entitled to judgment as a matter of law on the validity of the face detection patents, it has not shown that the jury's finding of noninfringement should be upset. Fujifilm's argument for judgment as a matter of law or a new trial on this issue relies heavily on its contention that Motorola and Dr. Bovik presented improper claim construction evidence to the jury. *See, e.g.,* Fujifilm Mot. at 8-11, 23-24.  There is no question that a party cannot "argue claim construction to the jury."  *Cordis Corp. v. Boston Sci. Corp.*, 561 F.3d 1319, 1337 (Fed. Cir. 2009); *see also* Dkt. No. 256 at 6-7 ("Order on Motions in Limine").  But I am not persuaded that Motorola and Dr. Bovik crossed over this line.  I agree with Motorola that Dr. Bovik permissibly rebutted the testimony of Barbara Fredericksen-Cross, Fujifilm's expert, and that Fujifilm failed to carry its burden regarding infringement.

---

[3] Motorola does cite to one excerpt in which Dr. Bovik uses the word "obvious" in connection with the face detection patents.  *See* Motorola Oppo. at 15 (citing Trial. Tr. at 1343:07-17).  I agree with Fujifilm, however, that Dr. Bovik plainly used the word to mean "self-evident" or perhaps "necessarily present," not to mean obvious within the meaning of 35 U.S.C. § 103.

United States District Court
Northern District of California

United States District Court
Northern District of California

I also disagree with Fujifim that its proposed final jury instruction on "not . . . import[ing] limitations from the specification . . . into the claims" was erroneously denied, given the various model jury instructions that were delivered to the jury.  *See* Final Jury Instruction No. 19 (Dkt. No. 329) ("The claims of a patent are important because it is the words of the claims that define what a patent covers.  The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage."); Final Jury Instruction No. 20 ("By understanding the meaning of the words in a claim and by understanding that the words in a claim set forth the requirements that a product or process must meet in order to be covered by that claim, you will be able to understand the scope of coverage for each claim."); Final Jury Instruction No. 22 ("A patent's claims define what is covered by the patent.").  And, in light of the standard applied in the Summary Judgment Order, I do not find that it was error to not instruct the jury on my "partial construction," Fujifilm Mot. at 25-27, of the face detection patents.

Fujifilm's motion for JMOL of infringement of the face detection patents, or for a new trial on the issue, is DENIED.

## II.      CLAIMS 1 AND 35 OF THE '119 PATENT

The '119 patent is titled "Telephone and Data Transmitting Method for Telephone."  '119 Patent (Trial Ex. 4).  The parties do not dispute that its priority date is in October 1999.  Claims 1 and 35 state as follows:

> 1. A data transmission system, comprising:
>
> a wireless telephone that receives data of at least one of an image and characters through a transmitting provider;
>
> a designating device on said wireless telephone for designating the data for reception by the wireless telephone and for selectively designating an apparatus to which the received data is to be transmitted;
>
> a display device on said wireless telephone for displaying information from the received data and displaying a designating address of the apparatus and displaying a menu for designating at least one of transmitting data and receiving data;
>
> and a wireless communicating device that communicates with the apparatus without the transmitting provider and transmits the data to

13

the apparatus designated by said designating device, wherein said menu comprises selections for a receive mode for indicating that data has been received, a transmit image mode for transmitting an image from the wireless telephone to an apparatus, a receive mail mode for receiving characters, and a transmit mail mode for transmitting characters.

[ . . . ]

35. A data transmission system, comprising:

a wireless telephone that receives data of at least one of an image and characters through a transmitting provider;

a designating device on said wireless telephone for designating the data for reception by the wireless telephone and for selectively designating an apparatus to which the received data is to be transmitted;

a display device on said wireless telephone for displaying information from the received data and displaying a designating address of the apparatus and displaying a menu for designating at least one of transmitting data and receiving data;

and a wireless communicating device that communicates with the apparatus without the transmitting provider and transmits the data to the apparatus designated by said designating device, wherein said display includes a menu comprising selections for at least one of a transmit image mode for transmitting an image from the wireless telephone to an apparatus, a receive mail mode for receiving characters, and a transmit mail mode for transmitting characters.

'119 Patent at 4:33-56, 9:41-63.  Fujifilm challenges the jury's findings on invalidity and licensing of claims 1 and 35, while Motorola challenges the jury's findings on infringement.  *See* Fujifilm Mot. at 28-36, 44-46; Fujifilm Reply at 13-22, 24-28; Motorola Mot. at 31-40 (Dkt. No. 361); Motorola Reply at 20-30 (Dkt. No. 376).

## A.     Invalidity

The jury found claims 1 and 35 of the '119 patent invalid for obviousness.  Verdict at 5. Fujifilm states that the only obviousness theory advanced by Motorola at trial was based on a combination of  (1) manuals for certain models of the Nokia 9000i Communicator telephone (Trial Exs. 958, 1050C) (the "Nokia Manuals"); and (2) Haartsen, et al. Bluetooth: Vision, Goals, and Architecture, Mobile Computing and Comms. R., Oct. 1998 (the "Bluetooth Vision Paper"). Fujifilm contends that this obviousness theory is defective because there was no evidentiary basis presented at trial for concluding that the Nokia Manuals were "printed publications" within the

14

meaning of the applicable pre-AIA version of 35 U.S.C. § 102.[4]  In the alternative, Fujifilm

contends that, even assuming that it was adequately established that Nokia Manuals were printed

publications, Motorola failed to present sufficient evidence that the combination of the Nokia

Manuals and the Bluetooth Vision Paper rendered claims 1 and 35 obvious.

Motorola responds that Fujifilm's argument "is nothing more than a red herring that

attempts to distract the Court from the fact that Motorola relied on the Nokia 9000i Communicator

*device* as the invalidating prior art reference, not the Nokia 9000i Communicator *Manuals*."

Motorola Oppo. at 37 (emphasis in original).  Motorola states that it relied on the Nokia Manuals

merely "as corroborating evidence to show the functionalities and existence of the Nokia 9000i

Communicator before October 1999." *Id.*  "As such," Motorola contends, "[it] did not need to

show that the [Nokia Manuals] were printed publications." *Id.* (internal quotation marks omitted).

In the alternative, Motorola argues that it provided the jury with sufficient evidence to reasonably

conclude that the Nokia Manuals qualified as printed publications before October 1999. *Id.* at 42-

44.

In support of its contention that it relied on the Nokia Communicator 9000i device and not

the Nokia Manuals as the prior art reference, Motorola points to its Amended Reduction of Prior

Art References, filed on February 27, 2015, which lists "Nokia Communicator 9000i" as a prior

art reference for the '119 patent.  Dkt. No. 230.  Motorola also highlights its Motion to Strike

Portions of Martin Haeberli's Expert Reports, filed on February 4, 2015, where it attacked certain

portions of Haeberli's rebuttal report regarding the Nokia 9000i Communicator and described the

---

[4] The relevant pre-AIA version of 35 U.S.C. § 102 provides in relevant part:

A person shall be entitled to a patent unless:

(a) the invention was known or used by others in this country, or
patented or described in a printed publication in this or a foreign
country, before the invention thereof by the applicant for patent, or

(b) the invention was patented or described in a printed publication
in this or a foreign country or in public use or on sale in this country,
more than one year prior to the date of the application for patent in
the United States, or

35 U.S.C. § 102(a)-(b).

1  Nokia Manuals as "corroborative evidence." Dkt. No. 190 at 13-14.

2          I agree with Motorola that the prior art reference here is the Nokia 9000i Communicator

3  telephone, not the Nokia Manuals. Fujifilm contends that Motorola's obviousness theory fails

4  nonetheless because no actual Nokia 9000i Communicator phone was admitted at trial. The

5  Federal Circuit has held, however, that materials other than the invalidating device itself may

6  provide substantial evidence of the device's functionality for the purposes of proving invalidity.

7  In finding a patent invalid under 35 U.S.C. § 102(b) in *Sonoscan, Inc. v. Sonotek, Inc.*, 936 F.2d

8  1261 (Fed. Cir. 1991), the Federal Circuit stated, "That the offered product is in fact the claimed

9  invention may be established by any relevant evidence, such as memoranda, drawings,

10  correspondence, and testimony of witnesses." *Id.* at 1263 (internal quotation marks omitted).

11  Similarly, in *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 375 F.3d 1341 (Fed. Cir. 2004), the

12  Federal Circuit relied on a combination of "contemporaneous correspondence, color photographs,

13  witness testimony, and promotional videos" to establish the characteristics of an anticipating

14  process. *Id.* at 1352-1354.

15          Motorola could have made a stronger showing regarding the Nokia 9000i Communicator.

16  Still, its expert, Dr. Harry Bims, gave detailed testimony regarding the specific functionality of the

17  Nokia Communicator 9000i based on his review of the Nokia Manuals. *See, e.g.,* Trial Tr. at

18  1099:10-1102:06; 1141:04-1142:15. Two other witnesses, including Fujifilm's expert Martin

19  Haeberli, also provided testimony, albeit less detailed than Dr. Bims's, regarding the availability

20  and functionality of the device. *See* Trial Tr. at 549:12-25; Trial Ex. 1236. The jury had a

21  substantial basis from which to infer the relevant characteristics of the Nokia Communicator

22  9000i.

23          Fujifilm contends that Dr. Bim's description of the Nokia Manuals cannot be reasonably

24  attributed to an actual Nokia Communicator 9000i phone from the relevant time period, given that

25  there were multiple models of the Nokia Communicator 9000i, not all of which were sold in the

26  United States during that time. *See* Fujifilm Reply at 16-17. This argument might be persuasive if

27  there were evidence of material variation among the different Nokia Communicator 9000i models

28  – such as evidence that certain of the models did not possess the relevant functionality – but

United States District Court
Northern District of California

16

1    Fujifilm cites no evidence indicating that this was the case.  Moreover, before the start of trial, I

2    specifically authorized Mr. Haeberli to "offer his opinion on why a product manual . . . may fail to

3    accurately describe the underlying product, and why in this case he believes there is insufficient

4    evidence that the [Nokia Manuals] accurately describe the [Nokia Communicator 9000i]."

5    *Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-cv-03587-WHO, 2015 WL 1265009, at *13

6    (N.D. Cal. Mar. 19, 2015).  Despite this ruling, Mr. Haeberli did not offer any testimony at trial

7    regarding the purported unreliability of the Nokia Manuals.

8            Fujifilm argues in the alternative that the Nokia 9000i Communicator and the Bluetooth

9    Vision Paper fail to render claims 1 and 35 obvious because they do not disclose two elements of

10   the claims: (1) the "designating device . . . for selectively designating an apparatus to which the

11   received data is to be transmitted" element; and (2) the "displaying a designating address"

12   element.  Fujifilm Mot. at 32-34.  It also contends that Motorola failed to present sufficient

13   evidence that a person of ordinary skill in the art would have been motivated to combine the two

14   references to arrive at the claimed invention.  *Id.* at 34-36.  Neither of these arguments warrants

15   upsetting the jury's verdict.  Dr. Bims specifically explained how both the Nokia Communicator

16   9000i and the Bluetooth Vision Paper disclosed the "designating device" element, Trial Tr. at

17   1147:16-1149:14, and how the Bluetooth Vision Paper disclosed the "designating address"

18   element," *id.* at 1150:07-1151-02.  The evidence presented by Fujifilm did not require the jury to

19   reject this testimony.  I also agree with Motorola that the jury was presented with sufficient

20   evidence of a motivation to combine the two references to find that their combination rendered

21   claims 1 and 35 obvious.  Fujifilm's motion for JMOL or for a new trial on this issue is DENIED.

22           **B.      Licensing**

23           The jury found that Motorola is licensed under the BPLA as to claims 1 and 35 of the '119

24   patent.  Verdict at 6.  Fujifilm contends that this conclusion was unreasonable, and that it is

25   entitled to judgment as a matter of law on licensing.  Fujifilm Mot. at 44-46.  I agree.

26           Fujifilm is an Adopter Member of the Bluetooth SIG.  Motorola is a Promoter Member of

27   the Bluetooth SIG.  Section 5(b) of the BPLA describes the license of "Necessary Claims" that

28   each Associate and Adopter Member of the Bluetooth SIG grants to each Promoter Member:

United States District Court
Northern District of California

17

United States District Court
Northern District of California

> Effective upon the adoption by Bluetooth SIG of each Bluetooth Specification, each Associate and Adopter Member and their Affiliates hereby grant to each Promoter Member and Associate and Adopter Member and all of their respective Affiliates (also collectively, "Licensee") a nonexclusive, royalty-free, perpetual, irrevocable, nontransferable, nonsublicenseable, worldwide license *under its Necessary Claims* solely to make, have made, use, import, offer to sell, sell and otherwise distribute and dispose of Compliant Portions; provided that such license need not extend to any part or function of a product in which a Compliant Portion is incorporated that is not itself part of the Compliant Portion.

BPLA § 5(b) (emphasis added). The BPLA defines "Necessary Claims" in the following two sentences:

> "Necessary Claims" means claims of a patent or patent application that (a) are owned or controlled by a party or its Affiliates (Licensor) now or at any future time while this License Agreement remains in effect; and (b) are necessarily infringed by implementing those portions of a Bluetooth Specification and/or Foundation Specification within the bounds of the Scope, wherein a claim is necessarily infringed only when it is not possible to avoid infringing it because there is no technically reasonable non-infringing alternative for implementing such portions of the Bluetooth Specification and/or Foundation Specification within the bounds of the Scope.
>
> Notwithstanding the foregoing sentence, Necessary Claims do not include any claims (i) other than those set forth above even if contained in the same patent as Necessary Claims; (ii) that read solely on any implementations of any portion of the Bluetooth Specification or Foundation Specification that are not within the bounds of the Scope; or (iii) that, if licensed, would require a payment of royalties by the Licensor to unaffiliated third parties.

*Id.* § 1(l) (paragraphing added). Finally, the term "Scope" is defined as

> the protocols and data formats needed for Bluetooth interoperability, and the electrical signaling characteristics solely to the extent disclosed with particularity in a Bluetooth Specification and/or Foundation Specification where the sole purpose of such disclosure is to enable products to interoperate, interconnect or communicate as defined within such Bluetooth Specification and/or Foundation Specification.
>
> For clarification, the Scope shall not include (i) any enabling technologies that may be necessary to make or use any product or portion thereof that complies with the Bluetooth Specification and/or Foundation Specification, but are not themselves expressly set forth in the Bluetooth Specification and/or Foundation Specification (e.g., semiconductor manufacturing technology, compiler technology, object oriented technology, basic operating system technology, etc.); or (ii) the implementation of other published specifications developed elsewhere but referred to in the body of the Bluetooth Specification and/or Foundation Specification; or (iii) any portions of any product and any

> combinations thereof the purpose or function of which is not required for compliance with the Bluetooth Specification and/or Foundation Specification; or (iv) Application Programming Interfaces, applications, or user interfaces; including the technology used to generate, display or interact with a user.

*Id.* (paragraphing added).

At trial, Motorola argued that claims 1 and 35 of the '119 patent were "Necessary Claims" for the purposes of the Personal Area Network ("PAN"), Dial Up Network ("DUN"), and Object Push ("OP") profiles. However, Motorola presented no evidence to the jury, and does not currently dispute, that claims 1 and 35 are not "necessarily infringed by implementing [the PAN, DUN, and OPP profiles] within the bounds of the Scope." BPLA § 1(l). Indeed, Motorola's expert, Dr. James Lansford, admitted at trial that the PAN, DUN, and OP profiles can be implemented without infringing claims 1 and 35. *See, e.g.,* Trial Tr. at 1250:23-25.

Motorola argues that there is nevertheless sufficient evidence to support the licensing verdict because, "[a]s Dr. Lansford explained during trial, claims 1 and 35 of the '119 patent are Necessary Claims because they recite both (1) in-Scope technology, such as the implementation of the [OP profile], and (2) enabling technologies, such as wireless telephones, that are reasonably necessary to implement those technologies." Motorola Oppo. at 49-50 (citing Trial Tr. at 1237:08-1241:01). This argument turns on the second provision of the second sentence of the "Necessary Claims" definition, which states that "Necessary Claims do not include any claims . . . that read solely on any implementations of any portion of the Bluetooth Specification or Foundation Specification that are not within the bounds of the Scope." BPLA § 1(l). Pointing to this sentence, Motorola contends that "[i]t follows that claims that combine enabling technologies with technologies that are within the Scope, i.e., those underlying the basic protocols and data formats required to communicate using the Bluetooth Standard, are Necessary Claims, unless another exception applies." Motorola Oppo. at 49 (emphasis omitted).

This argument is not persuasive. Its dispositive flaw is that it completely ignores the first sentence of the "Necessary Claims" definition, which plainly limits "Necessary Claims" to those that "are *necessarily infringed* by implementing those portions of a Bluetooth Specification and/or Foundation Specification within the bounds of the Scope." BPLA § 1(l) (emphasis added).

19

Motorola's position appears to be that it is okay to ignore the first sentence of the definition, because if the first sentence is given its plain meaning, then the second provision of the second sentence (i.e., the provision explaining that "Necessary Claims do not include any claims . . . that read solely on any implementations of any portion of the Bluetooth Specification or Foundation Specification that are not within the bounds of the Scope") would merely serve to clarify the first sentence and would thus be "wholly unnecessary." Motorola Oppo. at 49.

Motorola places far too much weight on the general rule that contract provisions should not be read as overlapping or redundant. As Fujifilm points out, "[e]ven agreements tailored to particular transactions sometimes include overlapping or redundant or meaningless provisions." Restatement (Second) of Contracts § 203 cmt. b; *see also* Fujifilm Reply at 25. This is clearly the case with the "Necessary Claims" definition. This is exemplified both in that Motorola's reading of the second provision of the second sentence would effectively eviscerate the definition of "Necessary Claims" set out in the first sentence, and also by the first provision of the second sentence, which explains that "Necessary Claims do not include any claims . . . other than those set forth above even if contained in the same patent as Necessary Claims." BPLA § 1(l). This provision is obviously designed to clarify the first sentence; Motorola does not explain how it could be reasonably read in any other way.

Motorola also contends that its position is supported by the BPLA's purported purpose of "facilitat[ing] sharing of intellectual property among [Bluetooth SIG] members and . . . avoid[ing] intellectual property disputes." Motorola Oppo. at 48; *see also id.* at 49 (arguing that Fujifilm's position "would undermine the BPLA's purpose of facilitating sharing of intellectual property necessary to practice the Bluetooth standard"). Tellingly, however, Motorola does not provide a citation for this sentence and does not identify any evidence in the record to support it. The BPLA's purported purpose does not provide a substantial basis for the conclusion that claims 1 and 35 of the '119 patent are "Necessary Claims" under the BPLA.

Fujifilm's motion for JMOL of no licensing of claims 1 and 35 of the '119 patent is GRANTED. Its request for a new trial on this issue is DENIED AS MOOT.

United States District Court
Northern District of California

1

**C.      Infringement**

2        The jury found that the accused products infringe claims 1 and 35 of the '119 patent.

3   Motorola's argument for judgment as a matter of law of noninfringement of these claims centers

4   on their respective "menu" limitations.  *See* Motorola Mot. at 37-40; Motorola Reply at 28-30.

5   Claim 1 requires a "menu compris[ing] selections for a receive mode for indicating that data has

6   been received, a transmit image mode for transmitting an image from the wireless telephone to an

7   apparatus, a receive mail mode for receiving characters, and a transmit mail mode for transmitting

8   characters."  '119 patent at 4:51-46.  Claim 35 likewise requires "a menu comprising selections for

9   at least one of a transmit image mode for transmitting an image from the wireless telephone to an

10  apparatus, a receive mail mode for receiving characters, and a transmit mail mode for transmitting

11  characters."  '119 patent at 9:59-63.

12       The parties do not dispute that to infringe claim 1's menu limitation, the accused product

13  must contain a menu with four modes: a receive data mode, a transmit image mode, a receive mail

14  mode, and a transmit mail mode.  *See, e.g.,* Motorola Mot. at 38.  Motorola argues that Mr.

15  Haeberli's testimony on infringement of this limitation was defective because it involved

16  "navigating through a series of different applications and application menus."  Motorola Mot. at

17  38; *see also* Motorola Reply at 28 ("Motorola's position is that the menu element as understood by

18  one skilled in the art cannot be satisfied by combining individual selections that only exist across a

19  variety of distinct applications that are not presented to the user at the same time or within the

20  same menu.").  Motorola identifies nothing in the '119 patent that required the jury to reject Mr.

21  Haeberli's testimony on claim 1's menu limitation, except to repeatedly refer to claim 1's

22  recitation of "a menu."  Mr. Haeberli specifically addressed this same argument in his testimony,

23  explaining that the claim says nothing about different applications or "having to jump between

24  screens."  Trial Tr. at 1683:21-25.  The jury was entitled to credit Mr. Haeberli's testimony, and to

25  rely on their own conclusions as to the menu limitation's "plain and ordinary meaning to a person

26  of ordinary skill in the art," Final Jury Instruction No. 18, to find that the accused products

27  infringe claim 1.

28       Motorola's argument regarding claim 35's menu limitation is substantially identical to its

United States District Court
Northern District of California

argument regarding claim 1's menu limitation.  Motorola contends that Mr. Haeberli's testimony failed to establish infringement of this limitation because the testimony relied on "a multistep process, involving multiple menu screens, multiple applications, and multiple user inputs." Motorola Mot. at 40.  Motorola again identifies nothing in the '119 patent to support this argument apart from the words "a menu" in claim 35.  Mr. Haeberli testified that the accused products contain a menu comprising a selection for a transmit image mode because they contain a menu selection for transmitting an image to another device via Bluetooth and/or DLNA.  Trial Tr. at 486:07-489:19.  He also specifically addressed the same argument Motorola relies on now, explaining that claim 35 says nothing about applications or about "navigating through different screens," and reiterating how the menu limitation is found in the accused products.  *Id.* at 1681:01-1683:11.  Again, the jury was entitled to credit Mr. Haeberli's testimony, and to rely on their own conclusions as to the menu limitation's "plain and ordinary meaning to a person of ordinary skill in the art," Jury Instruction No. 18, to find that the accused products infringe claim 35.

Motorola's motion for JMOL of noninfringement of claims 1 and 35 of the '119 patent, or for a new trial on the issue, is DENIED.

## III.    CLAIM 13 OF THE '119 PATENT

Claim 13 of the '119 patent recites:

> A data transmission system, comprising:
>
> at least one wireless telephone comprising:
>
> a first wireless communication device for receiving data;
>
> a first transmitting and receiving circuit coupled to said first wireless communication device;
>
> a transmitting and receiving buffer coupled to said first transmitting and receiving circuit for temporarily storing said data;
>
> a second transmitting and receiving circuit coupled to said transmitting and receiving buffer;
>
> and a second wireless communication device coupled to said second transmitting and receiving circuit for transmitting the data to a designated apparatus without a transmitting provider, wherein said wireless telephone receives and transmits the data without storing the entire data set on the wireless telephone.

'119 patent at 6:35-53.  As with claims 1 and 35 of the '119 patent, the jury found claim 13 invalid but infringed.  Verdict at 4-5.  It did not find the claim licensed under the BPLA.  *Id.* at 6. Fujifilm challenges the invalidity verdict, while Motorola challenges the infringement verdict.  *See* Fujifilm Mot. at 36-44; Fujifilm Reply at 22-24; Motorola Mot. at 32-37; Motorola Reply at 22-28.

### A.    Validity

The jury found claim 13 invalid as both anticipated and obvious.  Verdict at 5.  Fujifilm contends that neither invalidity finding is supported by sufficient evidence and requests both judgment as a matter of law and a new trial on the validity of claim 13.

### 1.    Anticipation

Fujifilm asserts that Motorola's only anticipation argument at trial rested on U.S. Patent No. 6,714,530 to Haartsen et al. ("Haartsen"), and that Haartsen does not disclose all of the elements of claim 13.  Specifically, Fujifilm contends that Haartsen does not disclose the claimed "data" of claim 13, because Haartsen discloses a "real-time voice transmission system," and the "real-time voice data" transmitted by this system "would not be considered to be the claimed 'data,' as one of ordinary skill in the art would understand that term."  Fujifilm Mot. at 37. Fujifilm also contends that Haartsen fails to disclose the claimed "transmitting and receiving buffer" of claim 13, because, according to Mr. Haeberli's testimony, the only buffer identified in Haartsen must be located in the disclosed system's transmitting circuit.  *Id.* at 38.  Fujifilm asserts that "[t]he presence of the buffer in the *transmitting* circuit . . . precludes it from being a transmitting and *receiving* buffer."  *Id.* (emphasis in original; internal quotation marks omitted).

I am not persuaded by either of these arguments.  Dr. Bims testified that the system disclosed in Haartsen transmits data and identified multiple places in the patent that describe the transmission and receipt of data by the disclosed system.  *See, e.g.,* Trial Tr. at 1113:17-1115:07. He also gave his opinion that the plain and ordinary meaning of "data" as used in claim 13 is not limited to high-quality image data, but rather extends to low-quality image data, application data, text data, video data, and, most relevant here, audio data.  *Id.* at 1201:12-1202:04; *see also id.* at 1207:24-1208:02 ("Q: First of all, do you agree that audio data is not data within the meaning of

23

United States District Court
Northern District of California

claim 13?  A: Audio data is, indeed, data within the meaning of claim 13.").  Mr. Haeberli

disagreed that Haartsen discloses the sort of "data" recited in claim 13, but the jury was not

required to credit Mr. Haeberli's opinion over Dr. Bims's.

With respect to the transmitting and receiving buffer limitation, Dr. Bims testified that the

"first-in-first-out" ("FIFO") buffer disclosed in Haartsen is a type of buffer in which the data

enters the buffer in a particular order, and that this order is preserved when the data leaves the

buffer.  Trial Tr. at 1117:16-20.  He specifically stated that the FIFO buffer disclosed in Haartsen

both transmits and receives data.  *Id.* at 1117:21-23.  He explained that this is because the

disclosed system "relay[s] data in both directions."  *Id.* at 1117:24-1118:01.  The jury was also

presented with an excerpt from Mr. Haeberli's deposition, taken after Dr. Bims had already

rendered his opinion that the FIFO buffer in Haartsen satisfies the transmitting and receiving

buffer limitation, in which Mr. Haeberli stated that he did not know whether a FIFO buffer would

satisfy the transmitting and receiving buffer limitation, but that he "can't imagine that there's an

argument that says [it] would not."  Trial Tr. at 1707:16-1708:08.  Mr. Haeberli opined at trial that

the FIFO buffer in Haartsen must be located in the system's transmitting circuit, and that it does

not make sense for the buffer to both transmit and receive data.  *See* Trial Tr. 1665:21-1668:09.

Again, however, the jury was not required to credit this testimony over that of Dr. Bims.

Fujifilm's motion for JMOL of no anticipation of claim 13 of the '119 patent, or for a new

trial on the issue, is DENIED.

### 2.     Obviousness

"[A]nticipation is the ultimate of obviousness."  *In re Baxter Travenol Labs.*, 952 F.2d

388, 391 (Fed. Cir. 1991).  Because the jury's finding of anticipation is supported by substantial

evidence, the same is necessarily true of its finding of obviousness.  *See id.*  Accordingly,

Fujifilm's motion for JMOL of no obviousness of claim 13 of the '119 patent, or for a new trial on

the issue, is DENIED.

### B.     Infringement

To prove infringement of claim 13, Fujifilm was required to show that the accused

products include "a transmitting and receiving buffer" that is "coupled to" a "first transmitting and

receiving circuit" and a "second transmitting and receiving circuit." *See* '119 patent at 6:42-45. Motorola contends that Fujifilm failed to present sufficient evidence for the jury to reasonably conclude that the accused products contain a "transmitting and receiving buffer," or that the transmitting and receiving buffer is "coupled to" the first and second transmitting and receiving circuits.

### 1.    "Transmitting and Receiving Buffer"

Mr. Haeberli testified that this limitation is satisfied by the random access memory ("RAM") in the accused phones. *See* Trial Tr. at 504:16-20 ("The phones each have random access memory, which is attached to the application processors in the phone.  And a piece of that RAM memory is partitioned off for the purpose of holding buffers – that is, packets . . . of data that are flowing through the phone.").  He explained that his opinion was based partly on his testing and analysis of data flow in the accused phones, partly on his review of some of the relevant source code, and also partly on the deposition testimony of Motorola's own engineers, Vissa and Labana.  *See id.* at 504:21-506:02.  Vissa agreed at his deposition that there is "separate RAM that's somewhere in the phone in which the buffering occurs."  Trial Ex. at 507 at 61:14-17. Labana similarly agreed at his deposition that "the data would then proceed from the transceiver and be temporarily stored in RAM."  Trial Ex. at 506 at 152:06-12.  The relevant portions of these depositions were shared with the jury at trial.

Motorola argues that Mr. Haeberli's testimony, and that of its engineers, cannot establish the "transmitting and receiving buffer" limitation because Fujifilm did not identify a particular structure in the accused phones that corresponds to the claimed "transmitting and receiving buffer."  Motorola cites *Cross Med. Products, Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293 (Fed. Cir. 2005), for the propositions that a system claim such as claim 13 "cover[s] what a device *is*, not what a device *does*," and that a device "must meet all of the structural limitations" of the asserted system claim to infringe.  *Id.* at 1311-12 (emphasis in original; internal quotation marks omitted).

Even assuming that Motorola is right on the law, it is wrong that Fujifilm failed to identify a "transmitting and receiving buffer" structure in the accused phones.  Mr. Haeberli clearly

United States District Court
Northern District of California

1   pointed to the RAM in the accused phones as the claimed "transmitting and receiving buffer."  *See*

2   Trial Tr. at 504:16-20.  In addition, Dr. Bims specifically identified the RAM in the accused

3   phones for the jury using a block diagram.  *See* Trial Tr. at 1094:02-18; Trial Ex. 265 at 7.

4   Motorola does not dispute that RAM qualifies as a structure.

5          Motorola next contends that the RAM in the accused phones cannot satisfy the

6   "transmitting and receiving buffer" limitation because the '119 patent "expressly discloses the

7   'transmitting and receiving buffer' and RAM as two distinct and separate structures."  Motorola

8   Reply at 25.  It is true that one figure in the '119 patent displays the "transmitting and receiving

9   buffer" and "RAM" as two distinct structures.  *See* '119 patent at Fig. 2.  But Motorola identifies

10  nothing in the '119 patent, much less in the language of claim 13, that *requires* the transmitting

11  and receiving buffer and RAM to be separate structures, or that precludes RAM from serving as

12  the transmitting and receiving buffer.  The jury was permitted to reject Motorola's reading of the

13  "transmitting and receiving buffer" limitation and to rely instead on Mr. Haeberli's testimony,

14  which is apparently what it did.  It did not act unreasonably, or without sufficient evidence to

15  support its conclusion, in doing so.

16          **2.   "Coupled To"**

17          Motorola's contention that there was insufficient evidence that the transmitting and

18  receiving buffer is coupled to the first and second transmitting and receiving circuits in the

19  accused phones is also unconvincing.  Mr. Haeberli specifically testified that the "coupled to"

20  requirement is satisfied and explained that his testing and analysis of data flow between the

21  relevant components confirmed that they are coupled together.  *See* Trial Tr. at 503:01-504:03,

22  506:04-507:01; *see also id.* at 1658:10-15 ("[T]he data flows in through the cellular transceiver,

23  through the . . . buffer portion or partition of RAM, and out through the WiFi and Bluetooth

24  transceivers of the accused devices.").  Dr. Bims opined that the coupling requirement is not

25  satisfied because the RAM in the accused phones is "connected to the CPU" and is not "in line"

26  with the cellular transceiver and the Bluetooth and Wi-Fi transceivers.  *See id.* at 1097 at 15-18.

27  But there is no "in line" requirement in claim 13; Dr. Bims admitted on cross-examination that the

28  claim does not contain those words.  *See id.* at 1175:18-19.  Again, the jury was permitted to reject

26

1    Motorola's reading of the "coupled to" limitation and to rely instead on Mr. Haeberli's testimony.

2          In sum, Motorola has not shown that the jury's finding of infringement of claim 13 of the

3    '119 patent was not supported by substantial evidence, or that it was contrary to the clear weight

4    of the evidence.  Motorola's motion for JMOL or for a new trial on this issue is DENIED.

5    **IV.    THE '763 PATENT**

6          The '763 patent is titled, "Method and Apparatus for Compression Coding of Image Data

7    Representative of a Color Image and Digital Camera Including the Same."  '763 patent.  At trial,

8    Fujifilm asserted infringement of claim 1, an independent claim, and of claims 2, 7, and 11, each

9    of which is dependent on claim 1.  The jury found each of the asserted claims valid; claims 1, 7,

10   and 11 infringed; and claim 2 not infringed.  Verdict at 3, 5.  The claims are as follows:

11          1.  An apparatus for compressing and coding image data
12      representative of a color image and including a luminance
        component and chrominance components, and outputting resulting
13      coded image data, said apparatus comprising:

14          a signal processing circuit for processing the image data to output
        processed image data;
15
            a storage for storing the processed image data and allowing the
16      processed image data to be read out in preselected blocks
        component by component;
17
            a compression coding circuit for compressing and coding the
18      processed image data read out of said storage component by
        component to output coded data;
19
            an outputting circuit for outputting the coded data;
20
            and a system controller for controlling said compression coding
21      circuit in accordance with a mode for compressing the image data;
22
            said system controller being operative in response to a
23      monochrome mode selected for compressing and coding the image
        data such that the image data render a monochrome image to fix
24      the chrominance components of the image data to a single, fixed
        value, and control said compression coding circuit to compress and
25      code resulting fixed chrominance components and the luminance
        component.
26

27          [ . . . ]
28

2. An apparatus in accordance with claim 1, wherein said signal processing circuit transforms an RGB color image signal input thereto to the image data including the luminance component and the chrominance components, and fixes the chrominance components to the fixed value when the monochrome mode is selected.

[ . . . ]

7. An apparatus in accordance with claim 1, wherein said compression coding circuit comprises: an orthogonal transforming circuit for executing orthogonal transform with the image data read out of said storage to thereby output corresponding transform coefficients; a quantizing circuit for normalizing the transform coefficients to thereby output normalized transform coefficients; and a coding circuit for assigning preselected codes to the normalized transform coefficients.

[ . . . ]

11. An apparatus in accordance with claim 1, wherein said compression coding circuit executes compression coding based on a JPEG system.

'763 patent at 13:49-14:59.  Motorola challenges the jury's findings on validity with respect to claims 1, 2, 7, and 11, and the jury's findings on infringement and damages with respect to claims 1, 7 and 11.  Motorola Mot. at 4-31; Motorola Reply at 2-20.  Fujifilm does not raise any arguments with respect to the '763 patent.

### A.    Validity

Motorola does not dispute the jury's rejection of its anticipation argument for claims 1, 2, 7 and 11 but contends that the jury erred by failing to find the claims obvious.  Specifically, Motorola asserts that the claims are obvious in view of U.S. Patent No. 6,486,981 to Shimura et al. ("Shimura"), "in combination with the skill and knowledge of one skilled in the art at the time of the invention."  Motorola Mot. at 15.[5]

The problem with this argument is that Motorola failed to raise it at trial.  Motorola did not

_____

[5] The day before the hearing on these motions, Motorola filed a notice informing the Court that Motorola had sought ex parte reexamination on claims 1, 2, 7 and 11 of the '763 patent, and that on November 17, 2015 the PTO had issued an office action rejecting the claims.  Dkt. No. 378. The parties agreed at the hearing that this does not impact the resolution of these motions, and neither party has submitted any additional/updated information about the PTO proceedings.

28

1    develop for the jury a single obviousness theory involving Shimura.  Dr. Bovik's testimony

2    regarding Shimura was focused exclusively on the theory that Shimura teaches all elements of

3    claims 1, 2, 7 and 11 of the '763 patent.  *See* Trial Tr. at 1369:15-1379:08.  Dr. Bovik's

4    demonstrative slides for Shimura contained two columns, one listing the elements of the asserted

5    claims and another titled "Shimura" with an empty box next to each of the elements.  *See* Fujifilm

6    Mot. at 18-19.  Counsel for Motorola added a check mark in each empty box as Dr. Bovik

7    testified, indicating that the corresponding element is found in Shimura.  *See, e.g.,* Trial Tr. at

8    1377:02-04 ("Q: So in your opinion, . . . does Shimura teach all the elements of claim 1 of the

9    '763 patent?  A: Yeah. All the boxes have been checked.  I didn't ask you to, but you did it.  Yeah,

10   I think every element is met.").  In line with Dr. Bovik's testimony and slides, during closing

11   argument counsel for Motorola stated:

12              We did talk about invalidity with respect to the '763 patent, and
              that was the Shimura reference.  The Shimura reference is, again, a
13              Japanese patent.  Professor Bovik discussed it at some length. And
              he concluded that all the elements of the claims are found in the
14              Shimura patent.

15   Trial Tr. at 1864:03-08.

16        Motorola urges that Dr. Bovik and others provided testimony regarding the skill and

17   knowledge of one skilled in the art at the time of the invention.  *See* Motorola Reply at 6-7.

18   Motorola also notes that Dr. Bovik's slides were titled "Invalidity," not "Anticipation."  *Id.*  But

19   Motorola fails to identify any testimony from the record that connects Shimura to the skill and

20   knowledge of one skilled in the art at the time of the invention, or that otherwise directly addresses

21   this obviousness theory (or any obviousness theory) involving Shimura.  I agree with Fujifilm that

22   Motorola cannot raise the theory now.  *See Fractus, S.A. v. Samsung Elecs. Co.*, 876 F. Supp. 2d

23   802, 838 (E.D. Tex. 2012) (holding that defendant waived any indefiniteness argument where it

24   "failed to present any explicit indefiniteness evidence at trial" and did not "make a single reference

25   to indefiniteness during trial;" stating that "[a]llowing [defendant] to revive its [indefiniteness]

26   defense post-trial deprives [plaintiff] of any opportunity to substantively respond with its own

27   testimony or evidence"); *Allergan, Inc. v. Barr Labs., Inc.*, 808 F.Supp.2d 715, 735 (D. Del. 2011)

28   (finding that defendants "clearly present a different theory of obviousness post-trial than was

presented at trial," and that defendants could not "switc[h] horses by combining pieces of testimony . . . into new obviousness theories. As defendants did not allow [plaintiff] to mount a defense at trial to the [new obviousness] theories, the court does not entertain them here").

Further, even assuming that Motorola's obviousness argument is not technically waived, given Motorola's total failure to coherently present an obviousness theory to the jury, Motorola's position that the jury was required to find obviousness, despite its undisputedly correct conclusion that Shimura patent does not anticipate, is far from convincing. Motorola's motion for JMOL of invalidity of the asserted claims of the '763 patent, or for a new trial on the issue, is DENIED.

### B.   Infringement

Motorola makes two basic arguments regarding the jury's verdict of infringement of claims 1, 7, and 11 of the '763 patent. The first concerns Dr. Castleman's testimony regarding claim 1's five hardware limitations, i.e., its "signal processing circuit," "storage," "compression coding circuit," "compression coding circuit," and "system controller" limitations. *See* Motorola Mot. at 7-9. The second concerns the "to fix" limitation in the final paragraph of claim 1. *See id.* at 10-15. Motorola makes no arguments specific to claims 7 and 11 except to note that they are dependent on claim 1.

### 1.   The Hardware Limitations

In its opening brief, Motorola argued that Dr. Castleman's testimony regarding claim 1's five hardware limitations was deficient because Dr. Castleman merely stated that the limitations were found in the accused phones but did not identify any specific corresponding structures in the phones. Motorola Mot. at 8-9. Motorola asserted that "[s]uch an unsubstantiated statement, limited only to the functionality and not the structure required by the claim language, and without any support or linking to the accused Motorola products or any evidence beyond Dr. Castleman's conclusory opinion, cannot satisfy Fujifilm's burden of proving" that the limitations are found in the accused phones. *Id.*

Fujifilm responded in its opposition brief by citing to Federal Rule of Evidence 705, which provides that "[u]nless the court orders otherwise, an expert may state an opinion – and give the reasons for it – without first testifying to the underlying facts or data. But the expert may be

required to disclose those facts or data on cross-examination." Fed. R. Evid. 705.  Fujifilm noted

that the Federal Circuit has recognized that Rule 705 is "fully applicable" to patent trials, which

are "particularly served" by Rule 705's purpose of "avoid[ing] complex and time consuming

testimony." *Symbol Techs., Inc. v. Opticon, Inc.*, 935 F.2d 1569, 1576 (Fed. Cir. 1991) (internal

quotation marks omitted).  Fujifilm also pointed out that Motorola declined to ask Dr. Castleman

any questions about the five hardware limitations on cross examination, and that Motorola's own

expert on the '763 patent, Dr. Bovik, agreed that these limitations are present in the accused

phones:

> Q: . . .You've gone through these . . . elements before. Would it be fair to say that all of the elements down to the said system controller, which you've described – those would be . . . hardware limitations that you said are generally found in prior art in most products. Correct?
>
> A. Yeah. I don't think anybody in this case has disputed that.
>
> Q. And there's no dispute that those elements are found in all of the accused '763 products. Correct?
>
> A. I have no problem with that statement.

Trial Tr. at 1400:03-13.  Motorola offers no counterargument in its reply brief and appears to have

abandoned its initial position on the hardware limitations.

      Whether or not Motorola has indeed abandoned the argument, I agree with Fujifilm that it

is without merit.  In light of the testimony of Dr. Castleman and Dr. Bovik, the total absence of

cross-examination or any contrary evidence regarding claim 1's hardware limitations, and Federal

Rule of Evidence 705, there was more than enough evidence to support the jury's conclusion that

the limitations are found in the accused devices.  Motorola's first argument does not justify

judgment as a matter of law of noninfringement; nor does it justify a new trial on the issue.

### 2.   The "To Fix" Limitation

      Motorola's second noninfringement argument is really a group of overlapping arguments

concerning the "to fix" (or "fixing") limitation of claim 1 of the '763 patent.  That limitation

appears in the final paragraph of claim 1, which reads, with emphasis added to the limitation:

> said system controller being operative in response to a monochrome mode selected for compressing and coding the image

United States District Court
Northern District of California

1

> data such that the image data render a monochrome image *to fix the chrominance components of the image data to a single, fixed value,* and control said compression coding circuit to compress and code resulting fixed chrominance components and the luminance component.

2

3

4    '763 patent at 13:66-14:06 (emphasis added).

5          Motorola attacks Dr. Castleman's opinion that the accused phones satisfy the "fixing"

6    limitation because they employ a process that results in a monochrome image with fixed

7    chrominance components.  *See* Motorola Mot. at 10-11.  According to Motorola, Dr. Castleman's

8    opinion is flawed because it "reduces the fixing limitation to a tautology: if all monochrome

9    images have zero-valued chrominance data, and any process that creates zero-valued chrominance

10   data satisfies the fixing limitation, then there is no difference between the 'render a monochrome

11   image' limitation and the fixing limitation."  *Id.* at 11.

12         While it is unclear how best to characterize this argument, I agree with Fujifilm that it is

13   without merit however characterized.  To the extent that it is a claim construction argument, it

14   fails because it is not timely.  The Federal Circuit has repeatedly held that "litigants waive their

15   right to present new claim construction disputes if they are raised for the first time after trial."

16   *Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*, 628 F.3d 1359, 1376 (Fed. Cir. 2010)

17   (internal quotation marks omitted); *see also, e.g., Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d

18   1352, 1360 (Fed. Cir. 2004).  At no point during the course of this litigation has Motorola

19   requested construction of the fixing limitation or offered a construction of it, except to argue at

20   summary judgment that the preamble of claim 1 is limiting (an argument I rejected).  To the

21   extent that Motorola's tautology argument is a claim construction argument, it is barred as

22   waived.

23         To the extent that the argument is something other than a claim construction argument, it

24   fails because it assumes that there is a redundancy in claim 1 that does not exist – or at least that

25   the jury was not required to avoid by rejecting Dr. Castleman's testimony.  In its post-trial

26   briefing, Motorola portrays the "fixing" limitation as part of one continuous phrase starting with

27   "compressing and coding the image data such that the image data render a monochrome image."

28   *See* Motorola Reply at 2-3.  But this is not the way that Motorola portrayed the "fixing" limitation

United States District Court
Northern District of California

32

United States District Court
Northern District of California

1    in its summary judgment briefing.  There, Motorola portrayed the final paragraph of claim 1 as

2    follows:

3            said *system controller being operative* in response to a
     monochrome mode selected for compressing and coding the image

4            data such that the image data render a monochrome image *to fix
     the chrominance components of the image data to a single, fixed*

5            *value*, and control said compression coding circuit to compress and
     code resulting fixed chrominance components and the luminance

6            component.

7    Dkt. No. 153 at 18 (emphasis in original).  I did the same in the Summary Judgment Order.

8    Summary Judgment Order at 23-24.  Under this reading, the phrase "compressing and coding the

9    image data such that the image data render a monochrome image" pertains to the claimed

10   "monochrome mode," while the "fixing" limitation pertains to the claimed "system controller."

11   In other words, claim 1 defines a "monochrome mode," one that is "selected for compressing and

12   coding the image data such that the image data render a monochrome image."  And claim 1 also

13   defines how the "system controller" operates: "in response to a monochrome mode" and "to fix

14   the chrominance components of the image data to a single, fixed value."  The phrase

15   "compressing and coding the image data such that the image data render a monochrome image"

16   explains when the "monochrome mode" is selected, while the "fixing" limitation explains what

17   the "system controller" does.  Under this reading, there is no redundancy in claim 1.

18           Motorola next contends that there was insufficient evidence that the "fixing" limitation is

19   found in the accused phones because those devices do not process color image data in

20   chrominance/luminance format.  *See* Motorola Mot. at 11-12.  Motorola states: "First, claim 1

21   recites a process (fixing) that is done to the chrominance components to create a monochrome

22   image.  This necessarily requires that there are color chrominance components to operate upon.

23   However, color image data in chrominance/luminance format never exists in the accused

24   Motorola products."  *Id.*  Like the "tautology" argument, this argument is hard to characterize but

25   fails however characterized.  To the extent that it is a new claim construction argument, it is

26   barred by the waiver doctrine discussed above.  To the extent that it is not a new claim

27   construction argument, it fails because it is substantially identical to an old one.  Motorola raised

28   essentially the same purported distinction between claim 1 and the accused products in its motion

33

United States District Court
Northern District of California

1   for summary judgment, albeit in the form of an argument that the preamble of claim 1 is limiting.

2   *See* Summary Judgment Order at 24-25.  I rejected the argument then, and Motorola does not

3   identify, much less establish, grounds that justify reconsideration at this juncture.

4          Finally, Motorola argues that the "fixing" limitation "requires that the conversion to

5   monochrome include fixing chrominance components to a single, fixed value," and that "[t]he

6   evidence was undisputed that Motorola generates monochrome output via calculation, not via the

7   straightforward 'fixing' of [claim 1]."  Motorola Mot. at 12.  Once again, to the extent that this is

8   a new claim construction argument, it is barred by the waiver doctrine discussed above.  To the

9   extent that Motorola is arguing that the jury could not have reasonably concluded that the plain

10  and ordinary meaning of "to fix" extends to the accused products, the parties presented competing

11  expert testimony on this issue.  Fujifilm's expert, Ms. Frederickson Cross, testified that the

12  algorithms employed by the accused products operate "to fix" the chrominance components in the

13  image data, and that "there is really very little difference" between "fixed" and "calculated" from

14  a software standpoint.  *See, e.g.,* Trial Tr. at 1564:19-1566:23.  Motorola objects to this testimony

15  as beyond the scope of Ms. Frederickson Cross's expert report and deposition, but while Motorola

16  objected to certain aspects of Ms. Frederickson Cross's testimony on this ground, it identifies no

17  point at which it objected to her testimony regarding whether the accused products perform the

18  required "fixing."  *See* Motorola Reply at 5.  In any event, while Dr. Bovik opined that there is a

19  distinction between the "fixing" disclosed in claim 1 and the "calculating" performed by the

20  accused phones, *see* Trial Tr. at 1368:10-12, I am not persuaded that the jury was required to

21  apply his conception of "fixing," even in the absence of competing testimony from Dr.

22  Frederickson-Cross, in particular given that Dr. Castleman's infringement testimony also

23  provided support for a broader reading of "to fix."

24         Motorola's motion for JMOL of noninfringement of claims 1, 7, and 11 of the '763 patent,

25  or for a new trial on the issue, is DENIED.

26  **C.      Damages**

27         The jury found that Fujifilm was entitled to a lump-sum award of $10.24 million for past

28  and future infringement of the '763 patent.  Verdict at 8.  Motorola argues that there is no

United States District Court
Northern District of California

1   substantial basis for this award, and that at most the record supports a lump-sum award of $2.45

2   million, the amount proposed by Motorola's damages expert, Dr. Nisha Mody, for infringement of

3   the '763 patent.  Motorola Mot. at 23.

4        Motorola's basic argument for upsetting the jury's damages award is that it far exceeds Dr.

5   Mody's proposed award for infringement of the '763 patent, and that Fujifilm's expert, Dr. Gareth

6   Macartney, opined that the parties would have entered into a running royalty agreement, not a

7   lump-sum agreement.  Motorola emphasizes that "[r]unning-royalty agreements can be relevant to

8   lump-sum damages," but that "some basis for comparison must exist in the evidence presented to

9   the jury." *Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1320 (Fed. Cir.

10  2010) (internal quotation marks omitted).  According to Motorola, there is no basis for comparison

11  here because of various flaws in Dr. Macartney's testimony.

12       This argument largely boils down to the position that because the jury did not specifically

13  apply either of the parties' experts' damages figures, their damages award must be overturned.  I

14  am not convinced.  The "factual determination of a reasonable royalty . . . need not be supported,

15  and indeed, frequently is not supported, by the specific figures advanced by either party."

16  *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1167 (Fed. Cir. 1991).  A jury

17  is "entitled to choose a damages award within the amounts advocated by the opposing parties."

18  *Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336, 1347 (Fed. Cir. 2011); *see also SmithKline*, 926

19  F.2d at 1168 ("[T]he district court may reject the extreme figures proffered by the litigants as

20  incredible and substitute an intermediate figure as a matter of its judgment from all of the

21  evidence.").  The "jury's choice simply must be within the range encompassed by the record as a

22  whole." *Unisplay, S.A. v. Am. Elec. Sign Co.*, 69 F.3d 512, 519 (Fed. Cir. 1995).  The jury's

23  $10.24 million lump-sum award is well within this range and is supported by substantial evidence.

24       Further, most if not all of Motorola's critiques of Dr. Macartney's damages opinions are

25  reiterations of arguments I previously rejected in ruling on Motorola's motion to exclude Dr.

26  Macartney's testimony from trial.  *See* Dkt. No. 269 ("Order on Defendant's Motion to Exclude

27  Testimony of Keith Pardy and Dr. Gareth Macartney").  To the extent that the critiques are still

28  relevant despite the jury's decision to award a lump-sum figure instead of a running royalty, they

go to weight, not admissibility, and do not provide a basis for upsetting the jury's damages award.

The damages award is "within the range encompassed by the record as a whole," *Unisplay*, 69 F.3d at 519, and is supported by substantial evidence.  Motorola's motion for JMOL on damages is DENIED.  Its requests for a new trial on damages and for remittitur are also DENIED.

## V.   PREJUDGMENT INTEREST

Fujifilm moves under Federal Rule of Civil Procedure 59(e) for a discretionary award of prejudgment interest.  The Supreme Court has held that "prejudgment interest should ordinarily be awarded [under 35 U.S.C. § 284] absent some justification for withholding such an award." *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 657 (1983); *see also Ecolab, Inc. v. FMC Corp.*, 569 F.3d 1335, 1353 (Fed. Cir. 2009) ("When a patentee asserts a patent claim that is held to be valid and infringed, prejudgment interest is generally awarded.").  The purpose of a prejudgment interest award in this context is to "compensate[] the patent owner for the use of its money between the date of injury and the date of judgment." *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1033 (Fed. Cir. 1996).  "In the typical case, an award of prejudgment interest is necessary to ensure that the patent owner is placed in as good a position as he would have been in had the infringer entered into a reasonable royalty agreement." *Gen. Motors*, 461 U.S. at 655.

The rate of prejudgment interest is left to the discretion of the district court, which may award interest at or above the prime rate. *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1545 (Fed. Cir. 1991).  A court may use the prime rate, the prime rate plus a percentage, the United States Treasury Bill ("T-Bill") rate, a state statutory rate, the corporate rate, or "whatever rate the court deems appropriate under the circumstances." *Junker v. HDC Corp.*, No. 07-cv-05094-JCS, 2008 WL 3385819, at *6 (N.D. Cal. July 28, 2008); *accord Apple, Inc. v. Samsung Elecs. Co.*, 67 F. Supp. 3d 1100, 1121 (N.D. Cal. 2014).  In addition to determining the appropriate rate of prejudgment interest, the court must also determine whether to award simple or compound interest. *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1555 (Fed. Cir. 1995).  This matter is also "largely within the discretion of the district court." *Id.*

Fujifilm seeks prejudgment interest at the California statutory interest rate of seven percent, compounded quarterly, from the start of infringement, which the parties agree is June 1,

United States District Court
Northern District of California

2009, until the date that final judgment was entered, August 6, 2015.  Rule 59 Mot. at 1-4 (Dkt. No. 363).  In the alternative, Fujifilm asks that I apply the prime rate of 3.25 percent, also compounded quarterly.  *Id.* at 4-5.  Dr. Macartney calculates that the state statutory interest rate compounded quarterly would result in a prejudgment interest award of $5,486,277.  Macartney Decl. ¶ 4, Ex. 1 (Dkt. Nos. 363-1, 363-2).  He calculates that the prime rate compounded quarterly would result in an award of $2,268,562.  *Id.* ¶ 5, Ex. 1.

Motorola opposes Fujifilm's request.  Dkt. No. 371 ("Rule 59 Oppo.").  It contends that "[g]iven the size of the jury's award, the Court should deny prejudgment interest all together."  Rule 59 Oppo. at 1; *see also id.* at 2 ("[F]or the reasons set forth in Motorola's Motion for Judgment as a Matter of Law and New Trial, the jury's award of $10.24 million far exceeds the appropriate amount of damages for the '763 patent supported by the record.").  In the alternative, Motorola asks that I apply the T-Bill rate, either without compounding or compounded annually, resulting in a prejudgment interest award of either $208,955 (without compounding) or $210,750 (compounded annually).  *Id.* at 2-6; Mody Decl. ¶ 7 (Dkt. No. 371-1).

In support of their respective positions on the appropriate interest rate, the parties offer competing characterizations of the quantum of evidence (if any) necessary to justify a prejudgment interest award calculated at above the T-Bill rate, and of Fujifilm's financial condition during the period of infringement.  Motorola contends that "the [T-Bill] rate is appropriate absent evidence justifying a higher amount," and that "Fujifilm has provided no evidence that it has borrowed money at any rate, much less that any debt Fujifilm has taken on could have been avoided if it had received the damages award in June 2009."  Rule 59 Oppo. at 2-3.  Citing to Fujifilm's annual reports, Motorola observes that Fujifilm maintained substantial reserves (over $2 billion) throughout the period of infringement.  *Id.* at 3; Mody Decl. ¶ 4.  Fujifilm responds that a review of its annual reports "reveals that [it] was only able to maintain its [cash] reserves through continuous and substantial cost reductions and structured reforms."  Rule 59 Reply at 4-5 (Dkt. No. 374).  Fujifilm also points out that the Federal Circuit has squarely held that "it is not necessary that a patentee demonstrate that it borrowed at the prime rate in order to be entitled to prejudgment interest at that rate."  *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540,

1   1545 (Fed. Cir. 1991); *see also Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*, 862 F.2d

2   1564, 1579-80 (Fed. Cir. 1988) (holding that a patentee does not have to make "an affirmative

3   demonstration, i.e., proof of borrowing at or above prime, . . . to be entitled to an award of

4   prejudgment interest at the prime rate") (internal quotation marks omitted).

5        I find that the appropriate interest rate here is the prime rate, compounded quarterly.

6   Motorola's arguments for withholding prejudgment interest altogether are not convincing, and

7   neither party offers more than a scintilla of evidence in support of its desired rate.  Absent a more

8   conclusive record, I find that the "the prime rate more nearly approximates the position [Fujifilm]

9   would have been in had [Motorola] entered into a reasonable royalty agreement." *A&L Tech. v.*

10  *Resound Corp.*, No. 93-cv-00107-CW, 1995 WL 415146, at *5 (N.D. Cal. June 29, 1995); *see*

11  *also Matter of Mahurkar Double Lumen Hemodialysis Catheter Patent Litig.*, 831 F. Supp. 1354,

12  1395 (N.D. Ill. 1993) ("When the record is inconclusive, courts commonly supply the prime rate

13  that banks charge for unsecured loans to creditworthy customers.").

14                            **CONCLUSION**

15       For the foregoing reasons, Fujifilm's motion for JMOL or for a new trial is GRANTED IN

16  PART and DENIED IN PART, Motorola's motion is DENIED, and Fujifilm's motion to alter or

17  amend the judgment is GRANTED.  Fujifilm is awarded prejudgment interest at the prime rate,

18  compounded quarterly.  An amended Final Judgment in accordance with this Order will issue.

19       **IT IS SO ORDERED**.

20  Dated: April 25, 2016

21

22  _____
    WILLIAM H. ORRICK
    United States District Judge

23

24

25

26

27

28

United States District Court
Northern District of California